584 A.2d 1082

**Matthew KERANKO, a minor By and Through his natural guardian, Richard KERANKO, Appellant,**

**v.**

**WASHINGTON YOUTH BASEBALL, INC., Appellee.**

Commonwealth Court of Pennsylvania.

Argued Oct. 1, 1990.

Decided Dec. 20, 1990.

Peter M. Suwak, Washington, for appellant.

Susan M. Key, with her, John P. Smider, Phillips, Faldowski & McCloskey, P.C., Washington, for appellee.

Before DOYLE and SMITH, JJ., and BARRY, Senior Judge.

DOYLE, Judge.

This is an appeal by Matthew Keranko, a minor, by his father, from an order of the Court of Common Pleas of

Washington County which sustained a preliminary objection of Washington Youth Baseball Inc. (WYB) that the Kerankos did not have standing to bring their action and, hence, dismissed their complaint.[1]

The complaint alleges that Matthew participated fully as a baseball player during the 1989 baseball season under the supervision of WYB and during that season he performed in an outstanding fashion. Despite his performance, Matthew was not selected for the League All–Star Team and, thus, did not engage in post-season tournament play.

According to the allegations in the complaint, the reasons for Matthew's non-selection for the All–Star Team were improper because he received the affirmative votes of four of the coaches which number is sufficient to qualify him for selection. One coach, however, after informing Mr. Keranko that he had voted for Matthew, recanted his statement and indicated that he had not voted for Matthew because of his concern about the relationship between Matthew's parents and Jim Osbourne, the coach of the All–Star Team. The complaint alleged that in the past Coach Osbourne had had personal disputes with Matthew's parents. Specifically, Coach Osbourne resented a rule violation protest made by Mr. Keranko, and Mrs. Keranko had engaged in a physical altercation with Coach Osbourne after she protested the Coach's failure to use another one of her sons during tournament play.

The President of PONY Baseball,[2] Roy Gillespie, made a preliminary inquiry into Matthew's non-selection and indicated that he believed Matthew "deserved" to be picked. Based upon Mr. Gillespie's statement, the comments of the coach who recanted his statement which were made to Mr. Keranko, and the previous relationship between Matthew's parents and Coach Osbourne, the Kerankos concluded that

1. Because of its disposition on the standing question, the trial court did not rule on WYB's demurrer.

2. The relationship of PONY baseball to WYB is not explained in the complaint. It appears to be a national organization of which WYB is a member.

Matthew's non-selection was due, at least in part, to "improper influence and/or impression created by Coach Osbourne." The Kerankos notified the council of WYB of what had occurred and requested a hearing or disciplinary action concerning the coaches or the personnel responsible for denying Matthew a position on the All–Star Team. WYB, however, refused to take any action. The Kerankos then filed their action in the common pleas court seeking either an order directing WYB to hold a hearing to identify and discipline league officials or, in the alternative, a hearing held by the common pleas court itself.

WYB then filed a preliminary objection challenging the Kerankos' standing and a demurrer. The trial court sustained the preliminary objection relating to standing and dismissed the complaint. This appeal ensued.

On appeal here we are asked to decide whether the Kerankos have standing to bring this lawsuit. When considering the preliminary objections, we must, of course, keep in mind that they admit as true all well-pled facts and inferences reasonably deducible therefrom, but not conclusions of law. *Independent Association of Pennsylvania Liquor Control Board Employees v. Kerr*, 35 Pa.Commonwealth Ct. 133, 384 A.2d 1367 (1978).

It is uncontested that WYB is a non-profit corporation. Accordingly, the Kerankos assert that their standing is conferred by Section 5793(a) of the Nonprofit Corporation Law of 1988, (Law) 15 Pa.C.S. § 5793(a).[3] That Section provides:

> Upon petition of any person whose status as, or whose rights or duties as, a member, director, member of an other [sic] body, officer or *otherwise* of a nonprofit corporation are or may be affected by any corporate action, the court may hear and determine the validity of such corporate action. (Emphasis added.)

3. This Section was renumbered on December 21, 1988 but the identical language had previously been found at Section 7783 of the Nonprofit Corporation Law of 1972, Act of November 15, 1972, P.L. 1063.

■ It was conceded at argument that the Kerankos are not members or directors of WYB. They assert, however, that they fall within the term "otherwise" under Section 5793(a). We must disagree. Under the doctrine of *ejusdem generis* when general expressions are used in a statute they are restricted to "things and persons similar to those specifically enumerated in the language preceding the general expressions." *Summit House Condominium v. Commonwealth*, 514 Pa. 221, 227, 523 A.2d 333, 336 (1987) (quoting *Butler Fair and Agricultural Association v. Butler School District*, 389 Pa. 169, 178, 132 A.2d 214, 219 (1957)). Here, the words preceding "otherwise" pertain to individuals who have a special relationship to the corporation by virtue of being a member, officer or member of another body. None of these categories is even remotely similar to the Kerankos' situation. They are best described as persons totally foreign to the corporation who may have been injured by its actions. We, thus, cannot hold that the Kerankos have standing under Section 5793(a).

■ Alternatively, the Kerankos contend that they have standing under Section 104 of the Associations Code, 15 Pa.C.S. § 104. That Section states:

Except to the extent otherwise provided in this title in cases where a statutory remedy is provided by this title, the court shall have the powers of a court of equity or chancery insofar as those powers relate to the supervision and control of corporations and other associations.

We believe, however that a fair reading of this Section does not support the Kerankos' argument. Here a remedy *is* available for the alleged infractions of the corporate officers. It is merely that the Kerankos are not among those empowered to seek the remedy. We cannot imagine that the legislature intended by the language in Section 104 to confer standing upon any person disgruntled by a nonprofit corporation's actions and permit those persons to bring a lawsuit in equity. It seems to us that if that were

so, charitable organizations would spend more time defending lawsuits than pursuing their laudable goals.

Affirmed.[4]

4. It is unfortunate for Matthew that he has, perhaps, been a victim of circumstances. We believe, however, that the sage advice to him contained in the letter of the PONY League President is worth repeating:

Matt,

Realize you must be somewhat—quite a bit, probably,—dejected about not being selected for the Washington Pony League tournament team.

I have talked to several people and hear various reasons, such as your hand injury, whether or not you would have wanted to play for Mr. [Osbourne] i[f] selected, whether or not he would have used you if you were selected, etc.

It all boils down to the fact that in spite of your play during the season, which in the opinion of most with whom I have talked would have certainly qualified you for tournament play, and your personal statistics, which identify you as a probable selection, you were not picked even though you deserved to be.

Nothing I can say can ease that pain.

This letter is to encourage you to continue to work hard to develop yourself as an athlete, and as a person.

The purpose of Pony Baseball is to help young people become happier and healthier adults through the experience they gain in a summer baseball program. Hopefully those experiences, those memories, are mostly happy ones. Happy or sad, however, they will help you learn a bit about life. Life, not as we would have it, but as it is.

Very few of us—if any—get all out of life that we want. Most of us—if not all—will feel at various times along the way that we have been cheated a bit, or passed over, because someone didn't like us, liked someone else better, was related to someone, or was returning a favor to someone. Many times, in spite of our best efforts, we fail to achieve a goal we have earned through no fault of our own.

All I can suggest is to keep on trying. I do believe that in the long run, dedication, hard work and achievement will be recognized. You will get some temporary setbacks along the way, but I think the Good Lord has a way of evening things out over the long haul.

When I speak to young people I usually pass along some words that another man gave to me a long time ago: "The people you want to get even with in life are not those who have hurt you, but those who have helped you."

Holding a grudge usually isn't worth the effort. When the pain passes a bit—and time will help you heal the wound—try to laugh it off, work harder and make your present detractors eat crow later on by showing them what they missed—both as a player and as a person—by not having you on their team.

God bless!

/s/ Roy Gillespie
President

## ORDER

NOW, December 20, 1990, the Court of Common Pleas of Washington County in the above-captioned matter is hereby affirmed.