**Robert PETTY and R.G. Petty Masonry, on behalf of themselves and all others similarly situated, Appellants**

**v.**

**HOSPITAL SERVICE ASSOCIATION OF NORTHEASTERN PENNSYLVANIA, d/b/a Blue Cross of Northeastern Pennsylvania, a non-profit Pennsylvania Corporation.**

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2008.

Decided Feb. 19, 2009.

8.  Because we have vacated the decision based on this issue, we will not address the other issues Claimant raised.

William R. Caroselli, Pittsburgh, for appellants.

Patrick J. O'Connor, Philadelphia, for appellee, Blue Cross of Northeastern Pennsylvania.

James S. Gkonos, Philadelphia, for amicus curiae, Capital BlueCross, Inc.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge [1], COHN JUBELIRER, Judge, SIMPSON, Judge.

OPINION BY Judge PELLEGRINI.

Robert Petty and R.G. Petty Masonry, on behalf of themselves and all others similarly situated (collectively, Petty), appeal the order of the Court of Common Pleas of Lackawanna County (trial court) sustaining the Preliminary Objections of the Hospital Service Association of Northeastern Pennsylvania, d/b/a Blue Cross of Northeastern Pennsylvania (Northeastern Blue Cross) and dismissing Petty's Complaint with prejudice. For the reasons that follow, we affirm.

R.G. Petty Masonry, a sole proprietorship in Clarks Summit, Pennsylvania, with Robert Petty as its sole proprietor, contracted with Northeastern Blue Cross to provide health insurance for its employees under a group policy. Northeastern Blue Cross is a Pennsylvania non-profit corporation that provides hospitalization insurance as an independent licensee of the Blue Cross Blue Shield Association. Petty filed this class action on behalf of all policyholders, subscribers, and members of Northeastern Blue Cross alleging that as of December 31, 2001, Northeastern Blue Cross had accumulated an excessive surplus (listed as reserves and unassigned funds) of over $403 million and established a corporate structure with a primary profit motive in violation of its charter, social mission, and the Pennsylvania Nonprofit Corporation Law of 1988 (Nonprofit Law), 15 Pa.C.S. §§ 5101–6162.

Count I of the Petty Complaint alleged that Northeastern Blue Cross violated Section 5545 of the Nonprofit Law,[2] 15 Pa.C.S. § 5545, because of its accumulation of excessive profits and reserves and conduct operating with a "for profit" motive. Count II included a Breach of Contract claim based on the relationship between subscribers and policyholders with Northeastern Blue Cross in a health insurance coverage contract. The third count in the Complaint alleged that Northeastern Blue Cross breached its fiduciary duty to the subscribers and policyholders while Count IV included a demand for inspection of Northeastern Blue Cross's books and records. The relief sought by Petty, among other things, requested the following: 1) the excess surplus be disgorged in a manner that the court deemed appropriate; 2) an order for an accounting and imposition of a constructive trust over the excess

---

1. The decision in the case was reached before January 1, 2009, when Judge Friedman assumed the status of senior judge.

2. 15 Pa.C.S. § 5545, provides:

   A nonprofit corporation whose lawful activities involve among other things the charging of fees or prices for its services or products, shall have the right to receive such income and, in so doing, may make an incidental profit. All such incidental profits shall be applied to the maintenance and operation of the lawful activities of the corporation, and in no case shall be divided or distributed in any manner whatsoever among the members, directors, or officers of the corporation. As used in this section the terms fees or prices do not include rates of contribution, fees or dues levied under an insurance certificate issued by a fraternal benefit society, so long as the distribution of profits arising from said fees or prices is limited to the purposes set forth in this section and section 5551 (relating to dividends prohibited; compensation and certain payments authorized).

surplus; and 3) an award of reasonable attorneys' fees from the excess surplus.

Northeastern Blue Cross filed Preliminary Objections to the Complaint;[3] however, by order of the trial court and stipulation of the parties, the matter was stayed pending this Court's decision in *Ciamaichelo v. Independence Blue Cross*, 814 A.2d 800 (Pa.Cmwlth.2002) (*Ciamaichelo I*). The parties filed a joint stipulation on January 23, 2002, in which they agreed to further stay the action pending the Pennsylvania Supreme Court's decision in *Ciamaichelo v. Independence Blue Cross*, 589 Pa. 415, 909 A.2d 1211 (2006) (*Ciamaichelo II*). A brief summation of the *Ciamaichelo* line of cases follows.[4]

*Ciamaichelo* dealt with a declaratory judgment action filed by subscribers and a policyholder of Independence Blue Cross (Independence) in which alleged that Independence breached contractual and fiduciary duties based on its alleged accumulation of excessive surplus and reserves. In *Ciamaichelo I*, we held that the approval of insurer's rates and reserves were matters within the exclusive jurisdiction of the Department. We further found that the filed-rate doctrine barred the cause of action because the claims set forth in it were essentially a collateral attack upon the Department's determination of an insurer's rates, from which the amount of an insurer's reserves were a consideration, and a finding that Independence's reserves were excessive would then require the Department to recalculate its approved rates.

In *Ciamaichelo II*, our Supreme Court reversed our determination that the Department had exclusive jurisdiction and instead held that the trial court should refer to the Department any issue or matter lying within its regulatory jurisdiction, including any remedial action necessary that would require its special competence. The Supreme Court remanded the matter to this Court to consider whether the trial court erred in overruling Independence's preliminary objections that the matter should be dismissed because the parties

---

**3.** With respect to Counts I, II, and III of the Complaint, Northeastern Blue Cross asserted the following: a lack of subject matter jurisdiction based on 40 Pa.C.S. § 6124(c), in which it alleged the Legislature vested the Pennsylvania Insurance Department (Department) with the exclusive authority to monitor Northeastern Blue Cross's reserves; a Demurrer pursuant to Rule 1028(a)(4) of the Pennsylvania Rules of Civil Procedure (Pa. R.C.P.) asserting the "filed-rate doctrine;" a Demurrer to Counts I, II, III pursuant to Pa. R.C.P. No. 1029(a)(4) for failure to exhaust administrative remedies; a Demurrer pursuant to Pa. R.C.P. No. 1028(a)(4) for waiver of the right to object to the rates and reserves at issue; Failure to Join an Indispensable Party and in the alternative, seeking a transfer pursuant to Pa. R.C.P. No. 1028(a)(5); a Demurrer to Counts I and IV pursuant Pa. R.C.P. No. 1028(a)(4) and 1028(a)(5) for failure to state a claim upon which relief may be granted under the Nonprofit Law; a Demurrer to Count II pursuant to Pa. R.C.P. No. 1028(a)(3) and Pa. R.C.P. No. 1028(a)(4) for failure to state a claim for breach of contract; a Demurrer to Count III pursuant to Pa. R.C.P. No. 1028(a) asserting failure to state a claim for breach of fiduciary duty; and a motion to strike scandalous and impertinent matter pursuant Pa. R.C.P. 1028(a)(2). (Certified Record (C.R.) at 9.)

**4.** Petty also filed a Motion for Permanent Injunction based on Northeastern Blue Cross's pledge of $175 million for a donation towards a new medical school and hospital in Northeastern Pennsylvania. On March 29, 2007, a hearing was held on Petty's Motion for Permanent Injunction and Northeastern Blue Cross's Motion to Strike Plaintiff's Motion for Permanent Injunction and to Stay all Proceedings before this Court. At the hearing, the trial court determined, with the agreement of the parties, that the matter would be stayed pending our decision in *Ciamaichelo v. Independence Blue Cross*, 928 A.2d 407 (Pa.Cmwlth.2007), *petition for allowance of appeal denied*, 596 Pa. 720, 944 A.2d 759 (2008) (*Ciamaichelo III*).

lacked standing and did not state claims for relief under the Nonprofit Law.

On remand in *Ciamaichelo III*, we held that Independence's subscribers had standing and a right to relief under Section 5793(a) of the Nonprofit Law, 15 Pa. C.S. § 5793(a),[5] because based on an examination of Independence's Articles of Incorporation, they placed subscribers in the same class as members, directors, other body members and officers and accorded the subscribers standing to state a claim under Section 5793(a) of the Nonprofit Law. By contrast, we found that the policyholders lacked standing because as consumers, they did not have special status, rights or duties under Independence's Articles of Incorporation. We then remanded the matter to the trial court for further proceedings.

■ After we issued our decision in *Ciamaichelo III*, the trial court sustained Northeastern Blue Cross's Preliminary Objections[6] and dismissed Petty's complaint with prejudice. Based on its review of the Nonprofit Law, applicable caselaw, and Northeastern Blue Cross's by-laws, the trial court found that Petty, as a subscriber, was not a member of Northeastern Blue Cross with governance rights and, as a result, lacked standing under 15 Pa. C.S. § 5793(a). The trial court also found that Petty lacked standing for its Breach of Contract and Breach of Fiduciary Duty claims and concluded that the allegations in the Complaint were more suitable for the Department than the trial court. It then dismissed the complaint, and this appeal followed.[7]

## I.

■ Petty contends that it was improper for the trial court to sustain Northeastern Blue Cross's challenge to its standing because a preliminary objection based on the lack of a capacity to sue cannot be determined simply by the facts of record. Petty points to *American Housing Trust III v. Jones*, 548 Pa. 311, 696 A.2d 1181 (1997), as persuasive authority that a court may not grant preliminary objections that raise a factual issue as to "lack of a capacity to sue," but must instead resolve the dispute by receiving evidence via interrogatories, depositions, or an evidentiary hearing. We disagree.

In *American Housing Trust III*, the issue before the trial court was whether

---

5. Section 5793(a) of the Nonprofit Law provides:
(a) General rule. Upon petition of any person whose status as, or whose rights or duties as, a member, director, member of an other body, officer or otherwise of a nonprofit corporation are or may be affected by any corporate action, the court may hear and determine the validity of such corporate action.

6. After we issued our decision in *Ciamaichelo III*, the trial court permitted Northeastern Blue Cross to revise their Preliminary Objections, which they did, and included the following preliminary objections to all counts: Demurrer pursuant to Pa. R.C.P. No. 1028(a)(4); Lack of Subject Matter Jurisdiction under Pa. R.C.P. No. 1028(a)(1), and Failure to Join a Necessary Party under Pa. R.C.P. No. 1028(a)(5).

7. An appellate court's review of a trial court's order sustaining preliminary objections and dismissing a complaint is limited to a determination of whether that court abused its discretion or committed an error of law. *In re Estate of Bartol*, 846 A.2d 209 (Pa.Cmwlth. 2004). In reviewing preliminary objections, all well pleaded relevant and material facts are to be considered as true, and preliminary objections shall only be sustained when they are free and clear from doubt. *McGriff v. Pennsylvania Board of Probation and Parole*, 809 A.2d 455 (Pa.Cmwlth.2002). Such review raises a question of law as to which our standard of review is *de novo* and our scope of review is plenary. *Buffalo Township v. Jones*, 571 Pa. 637, 813 A.2d 659 (2002).

the corporation's activities in the Commonwealth constituted "doing business" under Section 4121(a) of the Foreign Business Corporations Law, 15 Pa.C.S. § 4121(a), which would require the corporation to then obtain a certificate of authority without which it could not bring suit in the Commonwealth. Our Supreme Court found that the facts developed at the preliminary stage of the proceedings did not enable the trial court to make a determination as to factual details pertaining to the corporation's regular, repeated business contacts, which were critical in determining whether the corporation was required to obtain the certificate of authority. As a result, the Supreme Court concluded:

> Where this factual dispute was raised by the pleadings, in order for the trial court to properly rule on Appellee's preliminary objections to Appellant's complaint, there must be of record, all of the facts necessary for the trial court to determine whether Appellant is statutorily excluded from the requirement to obtain a certificate of authority. This necessarily entails facts going to both the nature and the extent of Appellant's activities in this Commonwealth. The trial court may not reach a determination based upon its view of the contraverted facts, but must revolve the dispute by receiving evidence thereon through interrogatories, depositions, or an evidentiary hearing. *Schmitt v. Seaspray–Sharkline, Inc.*, 366 Pa.Super. 528, 531 A.2d 801 (1987).

548 Pa. at 319, 696 A.2d at 1185.

Unlike in *American Housing Trust III*, there are no factual issues that would preclude consideration of Northeast Blue Cross's preliminary objection that Petty lacked standing to challenge the validity of Northeastern Blue Cross corporate actions. For example, Northeastern Blue Cross's first revised preliminary objection in the nature of a demurrer avers that Plaintiffs (Petty) are not members, directors, members of an other body, or officers of Northeastern Blue Cross, do not qualify under the "or otherwise" provision of Section 5793(a) of the Nonprofit Law, and, therefore, lack standing in this matter. In Petty's Answer, he avers that he does have standing because Northeastern Blue Cross regularly refers to Petty as "members" and that Petty stands in a "special relationship" with Northeastern Blue Cross. Neither of those averments raises factual issues but only legal conclusions that Petty claims flows from his status as a subscriber. Because there were no pertinent contested factual averments, the trial court properly addressed Northeastern Blue Cross's preliminary objections challenging Petty's standing brought under Pa. R.C.P. No. 1028(a)(4).

## II.

■ Petty asserts that contrary to the decision of the trial court, the subscribers have standing to challenge the surplus Northeastern Blue Cross maintains based on the following:

- Our decision in *Ciamaichelo III* that as a subscriber it has standing under Section 5793(a) of the Nonprofit Law to challenge the "validity" of corporate actions.
- The "special relationship" the subscribers maintain with Northeastern Blue Cross.
- Common-law standing for its breach of contract and breach of fiduciary duty claims based on its allegation of direct, immediate, and substantial harm resulting from Northeastern Blue Cross's accumulation of excess surplus.

### A.

■ Whether a party has standing to sue over corporate decisions is governed

by the Nonprofit Law. Under that law, the affairs of the corporation, unless stated otherwise in the corporate by-laws, are under the direction of its board of directors. Section 5721 of the Nonprofit Law, 15 Pa.C.S. § 5721. Those able to challenge the "validity" of corporate action are set forth in Section 5793(a) of the Nonprofit Law, which provides:

> (a) General rule. Upon petition of any person whose status as, or whose rights or duties as, a member, director, **member of an other body, officer or otherwise** of a nonprofit corporation are or may be affected by any corporate action, the court may hear and determine the validity of such corporate action.

15 Pa.C.S. § 5793(a). (Emphasis added.)

Petty contends that under our decision in *Ciamaichelo III*, the subscribers of Northeastern Blue Cross fall under the term "otherwise" within the meaning of the provision, giving them standing to challenge **all** corporate actions.

While *Ciamaichelo III* dealt with a similar challenge to the surplus maintained by a non-profit health insurer, unlike the facts of the instant matter, Independence's by-laws vested powers in distinct groups of subscribers that would have otherwise

been exercised by Independence's Board of Directors.[8] However, because there are no similar provisions in Northeastern Blue Cross's Articles of Incorporation or By-laws giving individual subscribers, groups of subscribers or even policyholders any rights at all, let alone any rights that would otherwise be exercised by the Board of Directors, they do not fall within those permitted by Section 5793(a) of the Nonprofit Law to challenge corporate actions.

### B.

Despite the absence of being given powers under Northeastern Blue Cross's Articles of Incorporation or By-laws, citing to *White v. Associates in Counseling and Child Guidance*, 767 A.2d 638 (Pa. Cmwlth.2001), Petty claims that "or otherwise" as used in Section 5793(a) of the Nonprofit Law pertains to more than being a "member, officer or member of another body," and applies to anyone that has a "special relationship" with the corporation. He claims that the subscribers have that special relationship with Northeastern Blue Cross because: (a) the Blue Cross Blue Shield enabling legislation recites on several occasions that subscribers are the primary reason for its existence; (b) Northeastern Blue Cross's Article of

---

8. Based on an examination of Independence's Articles of Incorporation, we concluded that subscribers were placed in the same class as members, directors, other body members and officers based on the powers granted to them. Specifically, we found that the Articles of Incorporation provided subscribers with the following:
· The rights of members to nominate directors (Article VI);
· The authority to remove an entire board of directors, or an individual director for no reason (Article VII(a));
· The authority to submit proposals to the board of directors for corporate action (Article VII(B));

· The rights of directors, other body members and members to make proposals relating to the Articles of Incorporation and By-laws (Article VII(b)(1));
· The rights of directors, other body members and members to propose the sale, lease or exchange of assets (Article VII(b)(2));
· The rights of directors, other body members and members to propose merger consolidation, division, and conversion plans (Article VII(b)(3)); and
· The right of directors, other body members and members to propose voluntary dissolution (Article VII(b)(4)).

Incorporation[9] and public pronouncements as to the source and purpose of the surplus at issue; and (c) Northeastern Blue Cross's references to subscribers as "members" during these proceedings.[10]

In *White*, we accepted an interlocutory appeal from the trial court certifying the following issue: " 'Does a non-officer at-will employee mentioned in the By–Laws of a non-profit corporation have standing under the 'or otherwise' provision of the Pennsylvania Nonprofit Corporation Law, 15 Pa.C.S.A. § 5793, as limited by *Keranko v. Washington Youth Baseball*, 136 Pa. Cmwlth. 709, 584 A.2d 1082 (1990)?' " *White*, 767 A.2d at 639. *Keranko* was the first time the term "special relationship" was used in interpreting what the term 'or otherwise' meant within the context of Section 5793(a) of the Nonprofit Law. In *Keranko*, a father and son filed suit against a youth baseball league, which was a non-profit corporation, and challenged its failure to select the son for an all-star team. The youth baseball league filed preliminary objections challenging the father and son's assertion of standing under the term 'or otherwise' in Section 5793(a) of

the Nonprofit Law. We found that under the doctrine of *ejusdem generis*, when general expressions are used in a statute, they are restricted to " 'things and persons similar to those specifically enumerated in the language preceding the general expressions.' " *Id.* at 1084 (internal citations omitted.) This Court went on to find that the words preceding the term 'otherwise,' "pertain to individuals who have a special relationship to the corporation by virtue of being a member, officer or member of another body." *Id.* at 1084. Based on our construction of the term 'otherwise,' we concluded the Kerankos lacked standing as none of these categories were "even remotely similar to the Kerankos' situation," and that they were "best described as persons totally foreign to the corporation who may have been injured by its actions." *Id.*

The plaintiff in *White* was an employee of a non-profit corporation terminated from her position as Director of Administration, a position provided for in the nonprofit's by-laws and subject to appointment by the board of directors. White brought

---

9. Petty points to the Articles of Incorporation as establishing the "special relationship" between Northeastern Blue Cross's statutory obligations as a nonprofit corporation and its obligations to subscribers. Specifically, that section of Northeastern Blue Cross's Article of Incorporation provides:

THIRD: The corporation does not contemplate pecuniary gain or profit, incidental or otherwise to its members. The purposes for which it is formed are:

1. To establish, maintain and operate a Non-profit plan whereby health benefits may be provided to subscribers to such plan.
2. To make and enter into contracts with duly licensed hospitals and other organizations or facilities for the rendering of hospitalization and other health benefits to subscribers to such plan.
3. To establish a plan providing (a) certain hospital services to be rendered to such hospitals to subscribers, . . . .

4. To issue subscription agreements to subscribers to the said Nonprofit plan and to enter into group contracts in accordance with these purposes, . . . .
(Exhibit 2 to Petty Answer in Opposition to Preliminary Objections (Northeastern Blue Cross's) Articles of Incorporation.) (C.R. at 49.)

10. Petty contends that Northeastern Blue Cross continued to use the term "member" to describe its subscribers and policyholders and cites to another complaint in which Northeastern Blue Cross joined. (Exhibit 5 to Petty Answer in Opposition to Northeastern Blue Cross Preliminary Objections at C.R. 49.) Petty further asserts that facts upon which a special relationship with subscriber could exist because Northeastern Blue Cross, via its partner Highmark, allegedly testified that it acts in a fiduciary capacity to subscribers with respect to the surplus.

an action to have her position reinstated and to nullify actions taken at two board meetings. White's affiliation to the non-profit corporation was as an original incorporator, but she had also provided one-half or more of the assets necessary for the non-profit to begin performance and had entered into agreements with the non-profit on behalf of a for-profit entity established by her and the other incorporator who was purportedly attempting to remove her from the non-profit. Given those unique facts and because her former position of Director of Administration was set forth in the non-profit's by-laws, we held that her status was akin to that of an officer of that non-profit and concluded that she was within the meaning of "otherwise" in Section 5793(a) of the Nonprofit Law.

*White* then does not stand for the proposition, as Petty alleges, that any "special relationship" with a non-profit grants a party the right to challenge the non-profit's actions, but only that a special relationship making that party equivalent to an officer, director, or member, which confers standing under Section 5793(a) of the Nonprofit Law. While the overall purpose of the Northeastern Blue Cross's enabling legislation and Articles of Incorporation is to operate a plan where health benefits are conferred to subscribers, this does not place the subscribers in the same class as members, directors, other bodies or officers of the corporation. Rather, the subscribers retain a position as customers, who if the policyholder pays the premiums, are entitled to have their health care costs covered to the extent allowed by their respective policies. Because nothing in the enabling legislation, Articles of Incorporation or By-laws give subscribers or policyholders rights equivalent to "a member, officer or member of another body," Petty has not established that it falls within "otherwise" within the meaning of Section 5793(a) of the Nonprofit Law.

### C.

■ Petty avers that it has common law standing for breach of contract and breach of fiduciary duty claims because since subscribers under Northeastern Blue Cross's Articles of Incorporation are to receive the benefits of its non-profit status, they are aggrieved by Northeastern Blue Cross's failure to comply with the Nonprofit Law.[11] This argument fails for several reasons.

11. The Breach of Contract Claim in Count II of the Complaint is as follows:

68. Plaintiffs incorporate by reference as though fully set forth herein the allegations of Paragraphs 1 through 60.

69. Policyholders and subscribers were parties to a contract for health insurance coverage with Defendant. Attached as Exhibit A are true and correct copies of documents reflecting the contract with Defendant.

70. Plaintiffs, who were parties to a contract with Defendant, have performed their material obligations under all contracts with the Defendant.

71. The provisions of the Pennsylvania Nonprofit Law are incorporated into all contracts between Plaintiffs and Defendant.

72. A duty of good faith and fair dealing is incorporated into all contracts between Plaintiffs and Defendant.

73. Plaintiffs believe and therefore alleged that Defendants repeatedly breached its contracts with Plaintiffs by engaging in the acts set forth with more particularity in paragraphs 1 through 60.

74. As a direct and proximate result of Defendant's breaches of contract, Plaintiffs have been harmed.

WHEREFORE, Plaintiffs demand judgment under Count II against Defendant required its specific performance in accordance with the requirements of the Pennsylvania Nonprofit Law, as well as such additional relief as may be deemed appropriate. Specifically, Plaintiffs asks the Court to award the following relief:

■ First, the contract between policyholders and subscribers provides for health care coverage by Northeastern Blue Cross in exchange for the payment of premiums by policyholders. Policyholders or subscribers can sue for breach of contract if the insured medical care is not paid. Petty failed to articulate a breach of contract and state exactly how the subscribers and policyholders are "aggrieved." A litigant can establish that he or she has been "aggrieved" by showing a substantial, direct, and immediate interest in the outcome of the litigation in order to be deemed to have standing. *Bergdoll v. Kane*, 557 Pa. 72, 731 A.2d 1261 (1999). In the Breach of Contract claim, Petty states that as a direct and proximate result of Northeastern Blue Cross's breaches of contract, Plaintiffs have been harmed. In the paragraphs preceding Counts I–IV, Petty alleged that Northeastern Blue Cross's misconduct in acting as a non-profit in name only directly harmed thousands of uninsured Pennsylvanians as well as Northeastern Blue Cross policyholders, subscribers, and members. However, Petty fails to plead a direct or immediate interest as to why or how subscribers and policyholders have been harmed by the alleged actions of Northeastern Blue Cross in accumulating surplus other than the mere fact that this alleged action is prohibited by the Nonprofit Law. There is no allegation that, for example, health care services are no longer being provided

through the health insurance contract or are somehow inefficient, but instead Petty asserts a common interest and demands that Northeastern Blue Cross obey the laws of the Commonwealth. Because there is no claim that they have not been provided with the coverage for which premiums have been paid, Petty has not been so aggrieved to establish standing for the breach of contract claim.

Second, to adopt Petty's argument would mean that every person who contracts with a non-profit corporation could go beyond the confines of the underlying agreement and challenge the validity of any of that non-profit's corporate actions. While imaginative, this is nothing more than attempt to circumvent the Legislature's express limitation in Section 5793(a) of the Nonprofit Law that the only parties who are capable of challenging the validity of non-profit corporate action are "a member, director, member of an other body, officer or otherwise of a non-profit corporation." In addition, permitting Petty to establish standing would expose non-profit corporations to litigation and undermine this Court's decision in *Ciamaichelo III* where we went to great lengths to interpret Section 5793(a) of the Nonprofit Law and explain how subscribers, with specific governance powers enumerated in the articles of incorporation and by-laws were the only ones qualified to maintain actions under the term "or otherwise."

(a) an order declaring this action is properly maintained as a class action;
(b) an order declaring that the Defendant has violated Pennsylvania's Nonprofit Law by accumulating excessive, non-incidental and impermissible surplus resulting in excessive profits and by engaging in "for profit" activities in violation of its status as a Nonprofit corporation;
(c) that this Court order such other and further relief as may be appropriate under the circumstances with regard to the disposition of amounts held by the Defendant in

excess of that amount necessary for the financial solvency of Defendant and determined by the Court to be appropriate;
(d) that the Court award to Plaintiffs' attorneys for the class reasonable attorneys' fees and reimbursement of costs and expenses form the amount determined to be excessive; and
(e) that the Court award to the Plaintiffs and the class such other relief as the Court deems appropriate.
(Petty Class Action Complaint at pp. 22–23, C.R. at 10.)

## D.

In addition, we also reject Petty's contention that the trial court erred in holding that he failed to state a claim for breach of fiduciary duty for taking actions which he claims is improper governance.[12] While an insurer must act in good faith and due care when, for example, representing the interests of the insured, *see* *Brown v. Candelora*, 708 A.2d 104 (Pa.Super.1998), there is no allegation here that Northeastern Blue Cross has failed to provide policyholders and subscribers health insurance benefits as provided for in their contract of insurance. Again, while imaginative, if a non-profit's corporate action is not "valid," the only parties who can maintain the action to challenge this are those listed in 15 Pa.C.S. § 5793(a). Because Petty does not fall within any of the categories in 15 Pa.C.S. § 5793(a) and those who have contracts with insurance companies that may have fiduciary implications do not enable them to bring an action to challenge the validity of corporate action, the trial court properly found that they did not have a cause of action for breach of fiduciary duty.

## III.

Even though we need not address this issue because of our holding that Petty has no standing to challenge the validity of Northeastern Blue Cross's corporate actions, in the interest of completeness, we will address his contention that the trial court improperly dismissed the action due to lack of subject matter jurisdiction because it was going to refer to the Department the issue of whether Northeastern Blue Cross's surplus is excessive.[13] Petty contends that once the trial court decided that if he had standing it was going to refer the matter to the Department under the doctrine of primary jurisdiction, the trial court should have retained jurisdiction until the Department made its decision, not dismissed the action.

However, Northeastern Blue Cross contends that the trial court properly dismissed the Complaint because hypothetically, once it was referred to the Department, there would be nothing for the trial court to address after the Department made its determination. It further con-

12. Count III of the Petty Complaint for "Breach of Fiduciary Duty" provides:

75. Plaintiffs incorporate by reference as though fully set forth herein the allegations of Paragraphs 1 through 60.
76. Defendant, as a non-profit Pennsylvania corporation, stands in a fiduciary relationship with those plaintiffs who are subscribers and policyholders of the Defendant. As such, Defendant is required to act at all times with utmost good faith, undivided loyalty and with the purpose of advancing the interests of subscribers and policyholders of the Defendant.
77. At all relevant times, Defendant failed to discharge and breached its fiduciary duty by engaging in the actions set forth with more particularity above in paragraphs 1 through 60.
78. As a direct and proximate result of Defendant's breaches of fiduciary duty, Plaintiffs have been severely harmed.

WHEREFORE, Plaintiffs demand judgment under Count III against Defendant and equitable relief in the form of: (a) an accounting; (b) the imposition of a constructive trust over the excessive surplus; (c) attorneys' fees and costs; and (d) such other additional equitable relief as may be deemed appropriate.
(Petty Class Action Complaint at p. 24, C.R. at 10.)

13. The trial court stated:
"Without a conclusive determination that the surplus is illegally excessive, and considering the insurance department is charged by both statute and its inherent expertise and sophistication with determining issues of adequate surplus, we cannot find that this Court presents the proper forum for resolving this dispute."
(Memorandum Opinion of the Trial Court, June 27, 2007, p. 30.)

tends that if the Department determined Northeastern Blue Cross's surplus was not excessive, the matter would end. If, in the alternative, the Department decided the surplus was excessive and created a remedy, then it asserts the matter would again end.

■ "Primary jurisdiction" is a judicially created doctrine that permits courts to make a workable allocation of business between themselves and agencies responsible for the regulation of certain industries. In *Elkin v. Bell Telephone of Pa.*, 491 Pa. 123, 420 A.2d 371 (1980), our Supreme Court recognized primary jurisdiction as originally being a federal doctrine and explained:

The principles of the doctrine of primary jurisdiction are well settled. The United States Supreme Court "... recognized early in the development of administrative agencies that coordination between traditional judicial machinery and these agencies was necessary if consistent and coherent policy were to emerge.... The doctrine of primary jurisdiction has become one of the key judicial switches through which this current has passed." The doctrine "... requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme."

491 Pa. at 132, 420 A.2d at 376 (internal citations omitted.)

As to its effect, our Supreme Court then went on to state:

It is equally important to realize what the doctrine is not-it is not simply a polite gesture of deference to the agency seeking an advisory opinion wherein the court is free to ignore the agency's determination. Rather, once the court properly refers a matter or a specific issue to the agency, that agency's determination is binding upon the court and the parties (subject, of course, to appellate review through normal channels), and is not subject to collateral attack in the pending court proceeding. "The common law doctrine of res judicata, including the subsidiary doctrine of collateral estoppel, is designed to prevent the relitigation by the same parties of the same claim or issues." K.C. Davis, Administrative Law, § 18.10 (1972). **Once the administrative tribunal has determined the issues within its jurisdiction, then the temporarily suspended civil litigation may continue, guided in scope and direction by the nature and outcome of the agency determination.** *Feingold v. Bell of Pennsylvania,* supra [477 Pa. 1] at 22, 383 A.2d [791] at 801 [ (1977) ] (Pomeroy, J., dissenting).

491 Pa. at 133–34, 420 A.2d at 376–77 (emphasis added).

In *Ciamaichelo II*, our Supreme Court found the doctrine of primary jurisdiction applied "in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *Ciamaichelo II,* 589 Pa. at 427, 909 A.2d at 1218, (quoting from *Elkin v. Bell Telephone Company of Pennsylvania,* 491 Pa. 123, 132, 420 A.2d 371, 376 (1980).) If Petty had standing to maintain this action, under *Ciamaichelo II,* the proper course for the trial court was not to dismiss the action entirely when the matter of the excessiveness of surplus was referred to the Department, but to suspend the action until that determination was made.

However, because we find that the trial court correctly sustained Northeastern Blue Cross's Preliminary Objections as Petty lacked both common-law standing and standing under Section 5793(a) of the Nonprofit Law, the trial court properly

dismissed the Complaint. Accordingly, the order of the trial court to dismiss Petty's Complaint with prejudice is affirmed.

Judge SMITH–RIBNER and Judge SIMPSON dissent.

Judge LEAVITT did not participate in the decision of this case.

### ORDER

AND NOW, this *19th* day of *February,* 2009, the order of the Court of Common Pleas of Lackawanna County, dated June 27, 2008, is affirmed.

### CONCURRING OPINION BY Judge FRIEDMAN.

Like the majority, I would affirm the decision of the Court of Common Pleas of Lackawanna County (trial court) to grant the preliminary objections of the Hospital Service Association of Northeastern Pennsylvania, d/b/a Blue Cross of Northeastern Pennsylvania, (Northeastern Blue Cross) and dismiss the complaint filed by Robert Petty and R.G. Petty Masonry, on behalf of themselves and all others similarly situated, (collectively, Petty) for lack of standing.

I write separately to address Petty's argument that, as a subscriber, he has standing under section 5793(a) of the Pennsylvania Nonprofit Corporation Law of 1988 (Nonprofit Law)[1] to challenge Northeastern Blue Cross's corporate action. That provision provides, "Upon petition of any person whose status as, or whose rights or duties as, a member, director, member of an other body, officer or otherwise of a nonprofit corporation are or may be affected by any corporate action, the court may hear and determine the validity of such corporate action." 15 Pa. C.S. § 5793(a). Petty asserts that section 5793(a) confers standing because, under the Bylaws, the corporation is run solely by subscribers. (Petty's brief at 21 n. 15; Petty's reply brief at 6.)

Section 1.1 of the Bylaws states that the "membership of the Corporation shall consist of no less than forty (40) nor more than one hundred (100) persons who are subscribers...." (O.R., Plaintiff's supp. brief, ex. D(A) at 1.) Section 2.4 of the Bylaws states that "[a]ll Directors of the Corporation shall be subscribers...." (O.R., Plaintiff's supp. brief, ex. D(A) at 3.) Section 3.1 of the Bylaws requires the Board of Directors to establish Area Advisory Councils, "who shall be subscribers...." (O.R., Plaintiff's supp. brief, ex. D(A) at 7.)

Thus, all members, directors and members of the area advisory councils of Northeastern Blue Cross are subscribers. However, not all subscribers are members, directors or members of the area advisory councils. Thus, Petty's argument that the corporation is run by subscribers is misleading. Northeastern Blue Cross is run by subscribers who have been elected members, directors or members of the area advisory councils. Petty is a subscriber, but Petty has not been elected a member, director or member of an area advisory council. Thus, Petty does not now have standing to challenge corporate action. However, as a subscriber, Petty may seek election to membership at the next annual meeting, and, if elected, Petty would have standing.

Judge SIMPSON joins in this concurring opinion.

■

---

1.  15 Pa.C.S. § 5793(a).