Ilya Boguslavsky, Irene Boguslavsky Grigory Boguslavsky, Anne M. Boguslavsky, Appellants
v.
Lake Watawga Property Owners Association, James Branley, Thomas Dirvonas, George Zevan and Diane Zevan
No. 1511 C.D. 2009.
Commonwealth Court of Pennsylvania.
Submitted: January 29, 2010.
Filed: March 3, 2010.
BEFORE: PELLEGRINI, Judge; BUTLER, Judge; KELLEY, Senior Judge.

OPINION NOT REPORTED
MEMORANDUM OPINION BY JUDGE PELLEGRINI
Ilya Boguslavsky, Irene Boguslavsky, Grigory Boguslavsky and Anne M. Boguslavsky[1] (collectively, Homeowners) appeal from two orders of the Court of Common Pleas of Wayne County (trial court). The first order, dated October 12, 2006, granted the preliminary objections in the nature of a demurrer of Lake Watawga Property Owners Association (Association) and James Branley, the President of the Association (Branley), and dismissed Homeowners' complaint with regard to them. It also denied and dismissed Homeowners' preliminary objections to the Association's and Branley's preliminary objections. The second order, dated July 14, 2009, denied Homeowners' motion for summary judgment and granted the motion for summary judgment filed by George Zevan and Diane Zevan (collectively, the Zevans), who had sold property to Homeowners that was part of a "plan" which by deed provided those living in the "plan" with easements over the private roads and lakeshore in the "plan."[2]
On June 11, 2004, Homeowners purchased three parcels of property (Property) near Lake Watawga in Lehigh Township, Wayne County, from the Zevans. At the time, the Association maintained the private roads and the lake for members of the Association. Homeowners and the Zevans agree that at the time of sale, membership in the Association was voluntary.
On July 16, 2005, the Association amended its bylaws to come into compliance with the Uniformed Planned Community Act (UPCA), 68 Pa. C.S. §§5101-5414, which it had not been aware of previously. The Association made membership mandatory for all property owners within its borders and instituted a $300 annual fee so that it could continue its upkeep of the lake and private roads in the community. Homeowners did not wish to be part of the Association or pay its dues and instituted the instant action by filing a four-count complaint against the Association, Branley, the Zevans and the Zevans' attorney, who is no longer a part of this action.
In Count I of the complaint, Homeowners seek a declaratory judgment that the Association is a Unit Owners' Association of a planned community under the UPCA and contend that the Association does not consist exclusively of all owners of property with deeded rights to use Lake Watawga as it does not include properties on the eastern portion of the lake, which are governed by another planned community. Additionally, in Count I, Homeowners allege that the Association failed to produce the declaration that created it, but do not specify what relief they seek as a result of this alleged omission.
In Count II, Homeowners allege that in 2006, they had a potential sale of the Property for $545,000 but were unable to consummate the sale because the Association refused to provide the declaration for the planned community as required by Section 5407(a) of the UPCA, 68 Pa. C.S. §5407(a). Homeowners contend that this alleged omission was a willful violation of the UPCA and seek treble damages of the potential sale price ($1,635,000) plus the sale price, for a total of $2,180,000 in damages against the Association (in effect, quadruple damages).
In Count III, Homeowners allege that if the trial court answered Count I in the negative that there was no planned community, the Association and Branley violated the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. §§1961-1968. The basis for the RICO claim is that the Association and Branley allegedly engaged in a pattern of racketeering activity by committing mail fraud by repeatedly mailing requests for dues to Homeowners when they had no right to do so because membership in the Association was voluntary. Homeowners seek $2,180,000 in damages for this claim as well.
In Count IV, in the event that the trial court decided Count I in the affirmative that there was a planned community, Homeowners seek unliquidated damages against the Zevans for allegedly failing to disclose that the Property was in a planned community and to supply required information under Section 5407 of the UPCA at the time they sold the Property to Homeowners. Because of this non-disclosure, Homeowners contend that they did not know they were purchasing a home in a planned community, would be required to pay membership dues, and would have difficulty selling the Property due to the existence of the planned community. If Homeowners had known this information, they either would have offered a much lower price for the Property or not bought it at all.
The Association, Branley and the Zevans all filed preliminary objections, and Homeowners filed preliminary objections to the preliminary objections alleging that Branley's preliminary objections were untimely, unverified and legally insufficient. On October 12, 2006, the trial court issued an order granting the preliminary objections of the Association and Branley and denying Homeowners' preliminary objections with respect to them. The trial court orally granted the preliminary objections of the Zevans, but never entered an order on the docket dismissing the Zevans because there had been a misunderstanding between the trial court, Homeowners' attorney and the Zevans' attorney at the hearing on the preliminary objections that had not been discovered until the Zevans' attorney had left. Notwithstanding that the trial court never ruled on the Zevans' preliminary objections, Homeowners appealed the October 12, 2006 interlocutory order to this court, which quashed the appeal.[3]
In granting the Associations' and Branley's preliminary objections, the trial court dismissed all claims against Branley because the complaint alleged no action on his part beyond the scope of his duties as president of the Association and because any procedural problems in the filing of his preliminary objections caused Homeowners no harm. With regard to the Association, the trial court ruled that Spinnler Point Colony Association, Inc. v. Nash, 689 A.2d 1026 (Pa. Cmwlth. 1997), and Meadow Run v. Berkel, 598 A.2d 1024 (Pa. Super. 1991), held that an association has the authority to maintain easements and collect assessments from property owners entitled to use the easements regardless of whether the owner's chain of title referred to the association. Because the trial court dismissed Homeowners' complaint on this ground, it did not consider any other issues Homeowners raised.
Homeowners filed an amended complaint against all parties on November 27, 2006, and all parties filed preliminary objections to it. Before the trial court could rule on the preliminary objections, Homeowners filed a second amended complaint on December 17, 2007. The trial court issued an order dismissing the second amended complaint as untimely as against the Association and Branley. Homeowners have not appealed this order.
The Zevans then filed an answer to the second amended complaint followed by a motion for summary judgment on Counts I and IV, the only counts against them. The trial court granted the Zevans' motion for summary judgment on July 14, 2009, concluding that because the Zevans hold no interest in the Association, there is no basis to proceed with a declaratory judgment against them. Additionally, because both the Zevans and Homeowners agreed that at the time of the sale membership in the Association was voluntary, there was no concealment or misrepresentation of facts by the Zevans. Homeowners then appealed both the October 12, 2006 and July 14, 2009 orders to this Court.[4]

I.
In dismissing Counts I and III, Homeowners contend that the trial court erred in relying on Spinnler Point and Meadow Run in finding that they were obligated to pay common fees because in those cases, the association owned roads or was created to maintain roads while the Association, here, purportedly does not own roads and was created for purposes that exclude road maintenance. In Spinnler Point, which relies on Meadow Run, an association that maintained private roads and a lake required all property owners within the development to pay a fee to the association for upkeep of the roads and lake. A property owner owned a home within the development since 1978 with a deed and chain of title that gave him the right to use the roads and lake. In 1989, the association promulgated bylaws that required all property owners to pay an assessment fee. The property owner refused to pay the dues, and the association sued. This Court held that:
a property owner who purchases property in a private residential development who has the right to travel the development roads and to access the waters of a lake is obligated to pay a proportionate share for repair, upkeep and maintenance of the development's roads, facilities and amenities.
Id. at 1029. We further held that "there is an implied agreement to accept the proportionate costs for maintaining and repairing these facilities," Id. at 1028-29 (quoting Meadow Run, 598 A.2d at 1026), and emphasized that it was immaterial as to whether the property owner's chain of title referenced the association.
Just like in Spinnler Point and Meadow Run, Homeowners' deed and chain of title clearly grant them the right to use the common easements, including the private roads and the lake, and it is undisputed that the Association maintains these easements. As owners of property that is subject to the deed covenants, Homeowners are obligated to pay the Association's fees. Because they are obligated to pay the fees levied by the Association, regardless of whether the Association was formed under the UPCA, the trial court properly dismissed Counts I and III of the complaint against the Association and Branley.

II.
Homeowners contend that the trial court did not address Count II, which sought damages from the Association and Branley based on the failure of the Association to provide them information required by Section 5407 of the UPCA that they were to provide to a prospective buyer. Specifically, Homeowners contend that the Association failed to provide a copy of the "declaration" which is defined as "[a]ny instrument, however denominated, that creates a planned community and any amendment to that instrument" as required by Section 5407(a).
Acknowledging that it is subject to the UPCA, the Association contends that it is not required to provide that document because, as it informed Homeowners, while communities created after the UPCA was enacted have to supply a copy of a declaration because that was the only way it could come into existence,[5] this requirement does not apply to it because it was created before the UPCA was enacted. While we normally would remand this matter to the trial court as it was not addressed, because this case has been previously before us and our review is identical to that of the trial court, we will resolve that issue.
With regard to communities created prior to the UPCA effective date of December 19, 1996, Section 5102 of the UPCA, 68 Pa. C.S § 5102, limits the application of Section 5407 "to the extent necessary in construing any of those sections, apply to all planned communities created in this Commonwealth before the effective date of this subpart; but those sections apply only with respect to events and circumstances occurring after the effective date of [the UPCA] and do not invalidate specific provisions contained in existing provisions of the declaration, bylaws or plats and plans of those planned communities." Because Homeowners' complaint pleads that the Association was formed in 1974, the Section 5407(a) requirement that a copy of the "declaration" be provided is inapplicable, making Count II not maintainable.

III.
Finally, as to Count IV against the Zevans, Count IV alleges that in 2004, the Zevans misrepresented or concealed the fact that Homeowners would be required to join the Association and pay its dues. Because the Association did not make the decision to require all homeowners in the planned community to become members and pay dues until 2005, a year-and-a-half after the alleged misrepresentations, the trial court was correct in granting summary judgment in favor of the Zevans. The law does not require that individuals possess the ability to divine the future.
For the foregoing reasons, the orders of the trial court have the cumulative effect of dismissing the action against all parties and are affirmed.

ORDER
AND NOW, this 3rd day of March, 2010, the orders of the Court of Common Pleas of Wayne County, dated October 12, 2006, and July 14, 2009, are affirmed.
DISSENTING OPINION BY SENIOR JUDGE KELLEY
I respectfully dissent.
In the First Count of the original Complaint, Landowners "s[ought] Declaratory Judgment on the following question: Whether, under the [UPCA], defendant [Association] is a Unit Owners' Association of a planned community in which [Landowners]' property is a unit?". Complaint at 1, ¶ 1.
Article III, Section 1 of the Association's Constitution provides that "[m]embership in the Association shall be open to all owners of property ... with deeded rights to the use of Lake Watawga." Supplemental Reproduced Record (SRR) at 12b. However, none of the deeds in the chain of title to Landowners' property contain a deeded right to the use of Lake Watawga. Id at 43b-50b. More specifically, although the most recent deeds to the property contain a provision conveying the "same water rights ... as contained in prior Deeds forming the chain of title...", id. at 45b, 48b, the earliest deed in the chain of title does not contain a deeded right to the use of Lake Watawga. Id. at 49b-50b.
Thus, the record in this case reveals that Landowners' property is not a "unit" within the Association pursuant to the explicit provisions of the Association's Constitution. As a result, it is clear that the trial court erred in granting the Association's preliminary objections in the nature of a demurrer with respect to the First Count of the original Complaint, and in dismissing that count.
Accordingly, unlike the majority, I would reverse that portion of the trial court's order granting the Association's preliminary objections in the nature of a demurrer and dismissing the First Count of the original Complaint, and remand to the trial court for further proceedings in declaratory judgment on that count.
NOTES
[1] The Boguslavskys are proceeding pro se, but Ilya Boguslavsky is an attorney.
[2] A judgment of non pros was entered in favor of Thomas Zirvonas, on August 18, 2006. Homeowners did not appeal that judgment.
[3] The order and memorandum opinion can be found at No. 2065 C.D. 2006.
[4] Our review of a trial court's order sustaining preliminary objections and dismissing a complaint is limited to determining whether the trial court abused its discretion or committed an error of law. Petty v. Hospital Service Association of Northeastern Pennsylvania, 967 A.2d 439 (Pa. Cmwlth. 2009). In reviewing preliminary objections, all well pleaded relevant and material facts are to be considered as true, and preliminary objections shall only be sustained when they are free and clear from doubt. Id. Such review raises a question of law as to which our standard of review is de novo and our scope of review is plenary. Id.

This Court's review of an order granting summary judgment is plenary. Summary judgment may be granted only when the facts demonstrate clearly that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The standard of review is whether the trial court committed an error of law or abused its discretion. Rhoads v. Philadelphia Housing Authority, 978 A.2d 431 (Pa. Cmwlth. 2009).
[5] See 68 Pa. C.S. §5201, which provides:

A planned community may be created pursuant to this subpart only by recording a declaration executed in the same manner as a deed by all persons whose interests in the real estate will be conveyed to unit owners and by every lessor of a lease, the expiration or termination of which will terminate the planned community or reduce its size.