23 A.3d 1004

**Robert PETTY and R.G. Petty Masonry, Appellants**

v.

**HOSPITAL SERVICE ASSOCIATION OF NORTHEASTERN PENNSYLVANIA, d/b/a Blue Cross of Northeastern Pennsylvania, A Non–Profit Pennsylvania Corporation, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 1, 2010.

Decided June 20, 2011.

120 

122 

William R. Caroselli, Caroselli, Beachler, McTiernan & Conboy, L.L.C., Pittsburgh, for Robert Petty and R.G. Petty Masonry.

James G. Colins, Aaron Richard Krauss, Philadelphia, Patrick J. O'Connor, West Conshohocken, Cozen O'Connor, for Hospital Service Association of NE PA d/b/a Blue Cross of NE PA a non profit PA corp.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice EAKIN.

Appellant, Robert Petty, is sole owner of a construction company, co-appellant R.G. Petty Masonry. Petty Masonry contracts with respondent Blue Cross of Northeastern Pennsylvania, a nonprofit hospital corporation, to provide health insurance coverage for its employees; Petty is covered under the group policy as a subscriber.

Appellants filed a four-count class action lawsuit against Blue Cross on behalf of Blue Cross policyholders, subscribers, and members. The action asserted four separate theories of relief. In the first count, appellants alleged Blue Cross violated 15 Pa.C.S. § 5545 of the Nonprofit Law [1] by accumulating excessive profits and surplus well beyond the "incidental profit" permitted by the statute. The second count alleged Blue Cross breached its contract with appellants by violating the Nonprofit Law which was incorporated into the contract, and also breached its inherent duty of good faith and fair dealing by amassing the excess surplus. The third count contended

1. Section § 5545 provides:

 A nonprofit corporation whose lawful activities involve among other things the charging of fees or prices for its services or products, shall have the right to receive such income and, in so doing, may make an incidental profit. All such incidental profits shall be applied to the maintenance and operation of the lawful activities of the corporation....

 15 Pa.C.S. § 5545.

Blue Cross owed appellants a fiduciary duty by virtue of their status as subscribers and policyholders, and Blue Cross breached this duty when it accrued the excess surplus. The fourth count requested an inspection of Blue Cross's business records and bylaws.[2]

The trial court found appellants lacked standing to challenge Blue Cross's alleged violations of the Nonprofit Law, as they did not fall within the standing limitations set by 15 Pa.C.S. § 5793(a).[3] In reaching this conclusion, the court examined Blue Cross's incorporating documents and concluded appellants possessed no particular governance rights bringing them within § 5793(a)'s parameters.

The trial court then conducted what it termed a "traditional" standing analysis, and found appellants could not establish common law standing since they could not show they were aggrieved by either a breach of contract or breach of fiduciary duty by Blue Cross. The court reasoned the parties had a

**2.** On July 1, 2002, Blue Cross filed its first set of preliminary objections, to which appellants filed an answer. The trial court did not rule on the objections as both parties agreed to stay the matter pending this Court's decision in *Ciamaichelo v. Independence Blue Cross*, 589 Pa. 415, 909 A.2d 1211 (2006) (*Ciamaichelo I* ), where this Court held Nonprofit Law violations and breaches of contractual and fiduciary duty claims fall under the Court of Common Pleas' jurisdiction and are not precluded by the filed rate doctrine; we remanded the case for the Commonwealth Court to consider whether the plaintiffs had standing under the Nonprofit Law. On remand, the Commonwealth Court determined subscribers possessed powers similar to those of directors for purposes of the Nonprofit Law, and because their rights, duties, and status could be influenced by corporate accumulation of excess profits, they had standing to challenge corporate action. *Ciamaichelo v. Independence Blue Cross*, 928 A.2d 407 (Pa.Cmwlth.2007) (*en banc* ) (*Ciamaichelo II* ). Following disposition of *Ciamaichelo II*, the trial court in the current matter permitted Blue Cross to file amended preliminary objections in the nature of a demurrer to all counts of appellants' complaint. After argument, the court granted the amended objections and dismissed the complaint.

**3.** 15 Pa.C.S. § 5793(a) provides:

Upon petition of any person whose status as, or whose rights or duties as, a member, director, member of an other body, officer or otherwise of a nonprofit corporation are or may be affected by any corporate action, the court may hear and determine the validity of such corporate action.

*Id.* (footnote omitted).

contractual relationship for insurance for payment of health care services, and appellants were not alleging any breach of that contractual relationship. The court opined appellants had no protected property rights in their particular rates and had the remedy of shopping elsewhere if dissatisfied. The court likewise rejected the notion that appellants adequately articulated a breach of fiduciary duty claim since Blue Cross's only fiduciary duty to appellants specifically related to the performance of its duties under the insurance contract.

The Commonwealth Court affirmed the trial court's decision. *Petty v. Hospital Service Association of Northeastern Pennsylvania,* 967 A.2d 439 (Pa.Cmwlth.2009) (*en banc*). The court found its prior decision in *White v. Associates in Counseling and Child Guidance,* 767 A.2d 638 (Pa.Cmwlth.2001), construed § 5793(a) to require a party be "equivalent to an officer, director, or member" in order to have standing. *Petty,* at 447. The court held appellants were mere Blue Cross customers, and nothing in the articles of incorporation or bylaws afforded them rights equivalent to "a member, officer or member of another body." *Id.*

The Commonwealth Court also agreed with the trial court's finding that appellants lacked standing under common law principles. The court noted, although appellants averred in their complaint that Blue Cross breached its contract by violating the Nonprofit Law, they did not assert how a particular, direct, and immediate interest under the contract (*i.e.,* efficient receipt of health care services) was somehow compromised. *Id.,* at 448. In rejecting appellants' breach of fiduciary duty claim, the court again noted the lack of any Blue Cross action involving its specific duties arising out of the contractual relationship with appellants. The court, once more, observed appellants were challenging the legitimacy of corporate action, and because they did not fall within the specific categories of persons eligible to challenge such an act under 15 Pa.C.S. § 5793(a), they had no cause of action for breach of fiduciary duty. *Id.,* at 449.

■ We granted allocatur to consider the following questions:

1. Whether policyholders and subscribers who have purchased medical insurance from a nonprofit corporation have standing under 15 Pa.C.S. § 5793(a) of the Non Profit Corporation Law of 1988 to challenge the corporation's actions in court?

2. Whether policyholders and subscribers who have purchased medical insurance from a nonprofit corporation have standing to maintain a breach of contract claim for the nonprofit corporation's alleged violation of other provisions of the Non Profit Corporation Law of 1988, such as 15 Pa.C.S. § 5545?

3. Whether policy holders who have purchased medical insurance from a nonprofit corporation may maintain a claim for breach of fiduciary duty against that corporation for its alleged excess accumulation of surplus profits?

*Petty v. Hospital Service Association of Northeastern Pennsylvania*, 606 Pa. 114, 995 A.2d 873 (2010) (*per curiam*). As these issues present pure questions of law, our scope of review is plenary, and our standard of review is *de novo.* See *American and Foreign Insurance Company v. Jerry's Sport Center, Inc.*, 606 Pa. 584, 2 A.3d 526, 533 (2010). As already mentioned, standing to challenge the Nonprofit Law is governed by the statute itself:

Upon petition of any person whose status as, or whose rights or duties as, a member, director, member of an other body, officer or otherwise of a nonprofit corporation are or may be affected by any corporate action, the court may hear and determine the validity of such corporate action.

15 Pa.C.S. § 5793(a) (footnote omitted).

■ "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). "When the words of a statute are clear and free from all

ambiguity, they are presumed to be the best indication of legislative intent." *Chanceford Aviation Properties, L.L.P. v. Chanceford Township Board of Supervisors*, 592 Pa. 100, 923 A.2d 1099, 1104 (2007) (citation omitted).

Appellants contend the Commonwealth Court's decision establishes an overly restrictive standard for a party to establish standing under the Nonprofit Law. They contend the court created too narrow a standard which essentially requires an individual have a "special relationship" with the corporation "equivalent to an officer, director, or member." *Petty*, at 447. Appellants argue this restrictive standard necessarily produces the illogical result that the only persons able to challenge wrongful corporate conduct would likely be the very same people responsible for making dubious decisions or undertaking questionable action.

Appellants argue the existence of a special relationship between themselves and Blue Cross as subscribers was established by Blue Cross's articles of incorporation, which clearly provide that the corporation contemplated no pecuniary gain or profit and was formed for the purpose of operating a nonprofit plan to provide health benefits to subscribers. Thus, as Blue Cross operates solely for the subscribers' benefit, they possess a special interest in the corporation's actions sufficient to bestow upon them standing to challenge the surplus accumulation under § 5793(a).

In response, Blue Cross claims appellants lack standing to bring a claim under the Nonprofit Law, arguing appellants hold no role in corporate operations, administration, or governance, and therefore do not fall within § 5793(a)'s "or otherwise" language. Blue Cross maintains the Commonwealth Court did not create an overly restrictive standing standard by using the words "equivalent" and "in the same class" interchangeably, as its true focus remained whether "subscribers [are] in the same class as members, directors, other body members [and] officers." *Petty*, at 447. Blue Cross argues appellants lack any "special relationship" with the corporation to afford them standing. It claims appellants fail to articulate how they have suffered harm, other than to assert an unde-

fined harm to groups allegedly affected by the excess surplus. Blue Cross maintains appellants' allegations are unable to surpass the common interests of a general citizen in procuring obedience to the law.

■ The plain language of 15 Pa.C.S. § 5793(a) permits a court to review a corporate action "[u]pon petition of any person whose status as, or whose rights or duties as, a member, director, member of an other body, officer or otherwise of a nonprofit corporation are or may be affected by any corporate action...." *Id.* The contentious statutory language in this instance is "or otherwise," as appellants do not propose they qualify as one of the specific titles listed. Following the doctrine of *ejusdem generis,* we conclude that the general expression "or otherwise" is restricted in its interpretation to encompass only those positions similar to those expressly listed. *Summit House Condominium v. Commonwealth,* 514 Pa. 221, 523 A.2d 333, 336 (1987) (quoting *Butler Fair and Agricultural Association v. Butler School District,* 389 Pa. 169, 132 A.2d 214, 219 (1957) ("The doctrine of *ejusdem generis* mandates that '[g]eneral expressions used in a statute are restricted to things and persons similar to those specifically enumerated in the language preceding the general expressions.' ")).

In order to determine whether appellants' status falls under this umbrella, we must first understand the nature of the enumerated terms. The Nonprofit Act defines each of these titles specifically:

> **"Directors."** Persons designated, elected or appointed, by that or any other name or title, to act as directors, and their successors. The term does not include a member of an other body, as such. The term, when used in relation to any power or duty requiring collective action, shall be construed to mean "board of directors."

* * *

> **"Member."** One having membership rights in a corporation in accordance with the provisions of its bylaws. The term,

when used in relation to the taking of corporate action includes:

(1) the proxy of a member, if action by proxy is permitted under the bylaws of the corporation; and

(2) a delegate to any convention or assembly of delegates of members established pursuant to any provision of this subpart.

If and to the extent the bylaws confer rights of members upon holders of securities evidencing indebtedness or governmental or other entities pursuant to any provision of this subpart the term shall be construed to include such security holders and governmental or other entities. The term shall be construed to include "shareholder" if the corporation issues shares of stock.

\* \* \*

"**Officer.**" If a corporation is in the hands of a custodian, receiver, trustee or like official, the term includes that official or any person appointed by that official to act as an officer for any purpose under this subpart.

"**Other body.**" A term employed in this subpart to denote a person or group, other than the board of directors or a committee thereof, who pursuant to authority expressly conferred by this subpart may be vested by the bylaws of the corporation with powers which, if not vested by the bylaws in such person or group, would by this subpart be required to be exercised by either:

(1) the membership of a corporation taken as a whole;

(2) a convention or assembly of delegates of members established pursuant to any provision of this subpart; or

(3) the board of directors.

Except as otherwise provided in this subpart a corporation may establish distinct persons or groups to exercise different powers which this subpart authorizes a corporation to vest in an other body.

15 Pa.C.S. § 5103.

As the nature of the parties contractual relationship is defined by the incorporation documents, we must consider the

statutory definitions in light of their characterizations in the corporate bylaws. In regard to "members," Blue Cross corporate bylaws provide "[t]he membership of the Corporation shall consist of no less than forty (40) nor more than one hundred (100) persons who are subscribers to the Blue Cross of Northeastern Pennsylvania Plan or subscribers to any program offered by a wholly-owned subsidiary of the Corporation." Blue Cross Bylaws, at 1. Members are elected by a majority vote, and have the power to determine membership numbers, elect and remove members, vote on corporate actions, amend the bylaws, and perform any other legal act not inconsistent with the bylaws. *Id.*, at 2.

"Directors" possess even more authority than the members under the bylaws: they are entrusted with all the powers of the corporation except those specifically reserved or granted to the members. These powers generally relate to directing the corporation's business affairs, and include the power to borrow money, administer and dispose of real estate, and change the location of the registered office or principal place of business. *Id.*, at 3. A director must be elected by the members and must satisfy various criterion to be eligible to hold such office. *Id.*, at 4. "Officers" refers to elected positions such as a "Chairperson of the Board, a President, Executive or Senior Vice Presidents, a Treasurer, and a Secretary" and such other officers as may need to be appointed. *Id.*, at 8.

██ What is clear from examining both the statutory and corporate definitions of these terms is that each position entails various levels of authority, rights, and influence over corporate decision-making. Certainly, in listing all these titles, § 5793(a) clearly calls for a person of "status" with "duties." The list is noticeably vacant of any non-elected or non-authority-holding position. Accordingly, it must be concluded the "or otherwise" clause does not call for the inclusion of a layperson with no vested interest or authority in the corporations inner workings.

The Commonwealth Court has previously referred to this interest as a "special relationship" or a "special interest." In *White*, the Commonwealth Court considered whether "a non-officer at-will employee mentioned in the By–Laws of a non-profit corporation ha[s] standing under the 'or otherwise' provision of the Pennsylvania Nonprofit Corporation Law." *White*, at 639. The court determined § 5793(a)'s "or otherwise" language expanded the class of persons covered by the provision beyond those expressly enumerated, but that those additional individuals must be of the same "class[ ] of person[ ] of the same general nature as an officer, director or member, but not limited to persons in those groups." *Id.*, at 642. The court found White, who was an original incorporator of the nonprofit corporation, provided one-half or more of the essential assets for initial corporate performance, was appointed by Board resolution, acted as corporate liaison with outside entities, and carried multiple supervisory responsibilities, had a very special relationship with the nonprofit corporation which fell within the parameters of the "or otherwise" provision. Accordingly, the court found White had standing to challenge corporate actions. *Id.*, at 640, 642.

Following our remand in *Ciamaichelo I*, the Commonwealth Court considered the question of whether subscribers had standing under the Nonprofit Law to pursue their remedies. The court observed that, under Independence Blue Cross's articles of incorporation, subscribers had a special relationship with the nonprofit corporation as evidenced by their authority to both nominate and remove directors, as well as to propose corporate action via petition. *Ciamaichelo II*, at 412. The court additionally noted the subscribers' rights, duties, and status could be affected by the nonprofit's accumulation of excess profits. *Id.*, at 413. Accordingly, the court concluded, because the incorporation documents gave subscribers powers ordinarily afforded to directors, other body members, or members, subscribers fell within § 5793(a), and thus had standing to sue under the Nonprofit Law. *Id.*

Though we are not bound by *White* and *Ciamaichelo II*, we find these decisions instructive. Appellants assert Blue Cross

operates solely for the subscribers' benefit; therefore, all subscribers must possess a "special interest" in the corporation's actions sufficient to obtain standing under § 5793(a). However, § 5793(a)'s plain language affords standing only to those in influential positions. Appellants hold no such status, and indeed have no more special interest in corporate decisions than the average buyer does in getting a good bargain. While they might have a customer's interest in corporate integrity and business practices, that certainly does not bring them within the legislatively restricted class of individuals who may challenge corporate actions.

Moreover, we do not believe the Commonwealth Court created an overly stringent standard by requiring a challenging party to be "equivalent" to the enlisted titles in § 5793(a). The *Petty* court stated: *"White* then does not stand for the proposition ... that any 'special relationship' with a non-profit grants a party the right to challenge the non-profit's actions, but only that a special relationship making that party equivalent to an officer, director, or member, ... confers standing under Section 5793(a)...." *Petty,* at 447. The court further clarified this statement in the next sentence, stating: "While the overall purpose of ... Blue Cross's enabling legislation and Articles of Incorporation is to operate a plan where health benefits are conferred to subscribers, this does not place the subscribers *in the same class* as members, directors, other bodies or officers of the corporation." *Id.* (emphasis added). Considering the language in full context, we find no issue with the court's interchange of the terms "equivalent" and "in the same class." Effectually, the Commonwealth Court applied the principles of *ejusdem generis* and correctly determined the interpretation of the general expression "or otherwise" was restricted to encompass only those entitles similar in nature to the specifically enumerated titles found in § 5793(a). *Id.*

We appreciate appellants' argument that subscribers are the only parties with reason to challenge inappropriate corporate action; at first glance it may appear the Commonwealth Court's decision allows only the foxes to guard the henhouse. However, this not quite accurate, for the Attorney General is

vested with the power to bring an action alleging legal violations by nonprofit corporations. 15 Pa.C.S. § 5502. The henhouse is protected and the foxes are watched by the Attorney General, sitting like a farmer on the hill, ready to act when the hens are troubled or in danger. Complaints about the foxes may always be directed there.

We cannot subvert the plain language of the statute; to allow all subscribers and policyholders to challenge the inner workings of a corporation would effectually hamstring the corporation and render the specific language in the statute superfluous. *See* 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions."). We are convinced the legislature sought to give standing only to those select individuals vested with power and influence over the company, or, as other courts have articulated, to those possessing a "special relationship" with the corporation. Nothing in the enabling legislation, articles of incorporation, or corporate by-laws suggests subscribers or policyholders possess rights or status similar to "a member, officer or member of another body," or to any other individual in the same class as those enumerated persons. As a result, appellants fail to establish they fall within the "or otherwise" language of § 5793(a), and we find they lack standing as subscribers or policyholders to challenge Blue Cross's corporate actions.[4]

■ Having found appellants lack standing under the Nonprofit Law to challenge corporate actions, we turn to the question of whether they have standing to raise a breach of contract claim. Appellants argue the Nonprofit Law provisions Blue Cross allegedly breached were incorporated into the contract both by an express contractual provision which

4. Our holding today does not suggest subscribers or policyholders can never have standing to challenge corporate actions. Truly, if Blue Cross had provided authoritative powers to subscribers and policyholders in its incorporating documents, or if the parties had contractually agreed to allow subscriber standing, the outcome today might be different. As it is, we are aware of no law requiring nonprofit corporations to bestow such authority upon subscribers or policyholders, and it is not for us to make such a requirement or to undermine the legislative prerogative to restrict standing to challenge corporate actions.

provided the agreement was subject to Pennsylvania laws, as well as the established rule that the laws in place at the time of a contract's execution are incorporated into the contract and become contractual obligations. *See Walsh v. School District of Philadelphia,* 343 Pa. 178, 22 A.2d 909, 912 (1941). Appellants contend they were aggrieved by the breaches, which they also contend violated Blue Cross's duty of good faith and fair dealing towards them. They maintain improper accumulation of excess funds and diversion of funds to other purposes such as mergers and acquisitions deprived them of receiving the full benefits they were entitled to receive and would have received had Blue Cross properly fulfilled its obligations as a nonprofit corporation.

In support of this common law argument, appellants point to *Liss & Marion P.C. v. Recordex Acquisition Corp.,* 603 Pa. 198, 983 A.2d 652, 661 (2009) (permitting aggrieved parties to pursue common law breach of contract claim based on statutory violation because availability of common law claim provided only viable means to enforce statutory provisions). Appellants claim that allowing subscribers to pursue a common law breach of contract claim based upon a violation of the Nonprofit Law would provide aggrieved parties a viable means to enforce the contract and effectuate the legislature's intent to ensure that nonprofit corporations do not unlawfully accumulate an excess surplus.

Blue Cross contends appellants' claim fails because a party cannot do indirectly what it cannot do directly; thus, appellants cannot base a breach of contract claim on an alleged Nonprofit Law violation when the Nonprofit Law does not provide for a private cause of action. Blue Cross also claims appellants' incorporation argument fails as the entire Nonprofit Law, including § 5793(a)'s standing provisions, would be incorporated into the contract and prevent appellants from asserting a claim. It argues *Liss* is distinguishable from the current case, as both parties in *Liss* intended for the statute incorporated into the contract to control the terms, and the case did not hold a plaintiff can selectively incorporate certain portions of the statute into the contract.

We find appellants lack standing to pursue a common law breach of contract claim in this case.

The core concept of standing is that a party who is not negatively affected by the matter he seeks to challenge is not aggrieved, and thus, has no right to obtain judicial resolution of his challenge. A litigant is aggrieved when he can show a substantial, direct, and immediate interest in the outcome of the litigation. A litigant possesses a substantial interest if there is a discernable adverse effect to an interest other than that of the general citizenry. It is direct if there is harm to that interest. It is immediate if it is not a remote consequence of a judgment.

*In re Milton Hershey School,* 590 Pa. 35, 911 A.2d 1258, 1261–62 (2006) (internal citations and quotations omitted). "[A]s a general rule, a party to an insurance contract has standing to sue to enforce the terms of the insurance contract." *Kuropatwa v. State Farm Insurance Company,* 554 Pa. 456, 721 A.2d 1067, 1070 (1998).

However, appellants do not seek to prove an actual breach of the insurance contract's terms for matters such as failing to provide coverage for treatments or for poor settlement practices. Instead they seek to attack Blue Cross's business-making decisions, which we have already held they may not do under the Nonprofit Law. Appellants admitted at argument that the totality of the Nonprofit Law was incorporated into the contract for purposes of their argument. Logically, the Nonprofit Law's standing provisions, which do not include appellants, would continue to govern unless the parties specifically agreed otherwise in the contract—they did not. Had they done so, appellants would have a better argument they had a "special relationship" with the corporation affording them standing under § 5793(a), but that is not the contract before us.

We must reject appellants' reliance on *Liss. Liss* involved a class action on behalf of medical record requesters alleging medical record copying servicers charged unlawful rates for electronic records under the Medical Records Act (MRA). *Liss,* at 656. We found the MRA provided no remedy and

evidenced no legislative intent to limit the appellees' common law rights or preempt common law causes of action; we noted the legislature provided no mechanism or procedure for dispute resolution in such cases that the MRA was violated by designated agents. *Id.*, at 660. Accordingly, we concluded a common law claim was available because it was necessary to effectuate the legislature's intent to make medical record copying servicers subject to the MRA's pricing limits. *Id.*, at 661.

The current situation is distinguishable from *Liss* for several reasons. The relationship between the current parties is more tenuous than that in *Liss*, where appellees were directly harmed by being personally overcharged in violation of the MRA's price limitations. In contrast, appellants in this case are Blue Cross subscribers and policyholders with no direct involvement in Blue Cross's inner workings, and are unable to demonstrate a cognizable harm caused by Blue Cross's actions.

Secondly, whereas in *Liss* the legislature intended for the appellants to be subject to the MRA's pricing limits and provided no limitation as to who could raise that challenge, the Nonprofit Act's plain language indicates the legislature did not intend for general consumers to challenge corporate actions in a court of law. The mere presence of an articulate listing in § 5793(a) denotes the legislative intent to limit who would be able to challenge nonprofit corporate actions. Finally, appellants are not without remedy despite their inability to challenge corporate decisions, as they are free to shop elsewhere for insurance or to submit complaints to the Attorney General.

With these facts in mind, we cannot, in this case, permit appellants to do under common law what they are clearly prohibited from doing under statute, *see* 1 Pa.C.S. § 1504 (where remedy is provided or duty enjoined or anything directed to be done by statute, statutory directions must be strictly pursued), and hold appellants lack standing to maintain their breach of contract claim.

For similar reasons, we also reject appellant's breach of fiduciary duty claim. We have long required an insurer to operate with the "utmost good faith" toward its insured. *Fedas v. Insurance Company of Pennsylvania*, 300 Pa. 555, 151 A. 285, 286 (930); *see also Dercoli v. Pennsylvania National Mutual Insurance Company*, 520 Pa. 471, 554 A.2d 906, 909 (1989); *Cowden v. Aetna Casualty & Sur. Company*, 389 Pa. 459, 134 A.2d 223, 228 (1957). The insurer's duty of good faith is contractual, arising from the insurance company's assumption of a fiduciary status via the policy's provisions affording the insurer the right and responsibility to handle claims and control settlement. *See Gray v. Nationwide Mutual Insurance Company*, 422 Pa. 500, 223 A.2d 8, 11 (1966).

Again, we note appellants do not seek to address Blue Cross's breach of the insurance contract, but rather seek to attack corporate actions outside of the contractual terms to reach behavior at the core of the corporation's business functions. Appellants' attempt to assert a breach of fiduciary duty is simply another attempt, be it under a different name, to attack Blue Cross's business-making actions and decisions. While Blue Cross may have a fiduciary duty to appellants under its contract, that duty does not extend to Blue Cross's business practices, and thus appellants' breach of fiduciary duty claim cannot stand. Moreover, as we have already held appellants lack standing to challenge these actions under either statute or common law, we cannot allow them to attack those actions under the facade of a breach of fiduciary duty claim.

We find appellants lack standing under the Nonprofit Law to challenge Blue Cross's corporate actions because they do not exhibit the necessary characteristics required by the legislature. We likewise find appellants lack standing to maintain a breach of contract claim for Blue Cross's alleged Nonprofit Law violation. Finally, we find appellants may not maintain a claim for breach of fiduciary duty against Blue Cross, as this claim is a merely another attempt to attack corporate decision-making, and Blue Cross's fiduciary duty under the contract

does not include a duty to make proper business decisions. Accordingly, the Commonwealth Court's decision is affirmed.

Jurisdiction relinquished.

Chief Justice CASTILLE, Justices SAYLOR, BAER, TODD, McCAFFERY and ORIE MELVIN join the opinion.