# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Butler,                                         :
                              Appellant                   :
                                                          :
              v.                                          :     No. 1506 C.D. 2016
                                                          :     Argued:  April 4, 2017
Centurylink Communications, LLC,                          :
and all subsidiaries and related entities;                :
The United Telephone Company of                           :
Pennsylvania LLC, and all subsidiaries                    :
and related entities; Consolidated                        :
Communications of Pennsylvania,                           :
LLC, and all subsidiaries and                             :
related entities; Consolidated                            :
Communications Enterprise Services,                       :
Inc. and all subsidiaries and related                     :
entities; Core Communications, Inc.,                      :
and all subsidiaries and related                          :
entities; Intermedia Communications                       :
of Florida, Inc., and all subsidiaries                    :
and related entities; Verizon                             :
Pennsylvania, Inc., and all                               :
subsidiaries and related entities;                        :
Level 3 Communications, LLC, and                          :
all subsidiaries and related entities;                    :
Telcove of Eastern Pennsylvania,                          :
and all subsidiaries and related                          :
entities; AT&T Corp., and all                             :
subsidiaries and related entities;                        :
Teleport Communications America,                          :
LLC, and all subsidiaries and related                     :
entities; US LEC of Pennsylvania,                         :
Inc., and all subsidiaries and related                    :
entities; Bandwidth.com CLEC, LLC,                        :
and all subsidiaries and related                          :
entities; Comcast Phone of                                :
Pennsylvania, LLC, and all                                :
subsidiaries and related entities;                        :
Peerless Network of Pennsylvania,                         :
LLC, and all subsidiaries and related                     :
entities; and ABC Companies                               :
1 Through 20                                              :

**BEFORE:** HONORABLE P. KEVIN BROBSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge

**OPINION BY JUDGE BROBSON**        **FILED:** June 8, 2017

This is an appeal from a decision of the Court of Common Pleas of Butler County (trial court), sustaining Centurylink Communications, LLC and the remaining captioned appellees' (collectively, Service Providers) preliminary objections to the County of Butler's (County) complaint. The County's complaint alleged that the Service Providers did not fulfill their responsibilities under the statewide 911 emergency communication system. For the reasons set forth below, we reverse.

As an initial matter, we note that the underlying dispute in this case between the County and the Service Providers, namely whether the Service Providers failed to bill and undercharged subscribers, pertains to what we will refer to as the 911 Act, 35 Pa. C.S. §§ 5301-5312.1, prior to the General Assembly's amendments to the 911 Act that became effective in August 2015. As discussed further below, however, the instant appeal requires this Court to consider the 911 Act both before and after the effective date of the 2015 amendments.

Pursuant to the 911 Act, the County is responsible for the "implementation, operation and maintenance of a 911 system." Section 5304 of the 911 Act, 35 Pa. C.S. § 5304. Prior to the 2015 amendments, the statutory scheme operated in the following manner. Through the implementation of a "contribution rate" (911 fees), the 911 Act provided funding to counties to address the costs associated with each county's 911 calling and response system. Former Section 5302 of the 911 Act, 35 Pa. C.S. § 5302. The 911 Act, prior to

2

the 2015 amendments, also required telecommunication service providers to bill the 911 fees to subscribers and to remit the amount collected to the counties. *See* former Section 5307(a) of the 911 Act, 35 Pa. C.S. § 5307(a) (relating to collection and disbursement of 911 fees) and former Section 5311.14 of the 911 Act, 35 Pa. C.S. § 5311.14 (relating to Voice over Internet Protocol (VoIP) service), *repealed by* the Act of June 29, 2015, P.L. 36.[1]  It also required service providers to report information on "each interconnected VoIP service customer" relating to the 911 fee for that customer.  Former Section 5311.14(b)(2) of the 911 Act.

On February 11, 2016, the County filed a complaint in the trial court, alleging that the Service Providers failed to charge customers adequately and to

---

[1]  Following the 2015 amendments to Section 5307(a) of the 911 Act, Section 5307(a) continues to require providers to bill and collect the 911 fees, but Section 5307(a) now requires providers to remit those fees to the State Treasurer for deposit into what is now known as the "911 Fund."  *See* Sections 5306.1 and 5307(a) of the 911 Act, 35 Pa. C.S. §§ 5306.1, 5307(a).  Section 5302 of the 911 Act defines "provider" as:

> [a] person that provides service to the public for a fee that includes 911 communications service, including, but not limited to, a local exchange carrier, a wireless provider, a prepaid wireless provider, a VoIP provider or a provider of next generation 911 or successor services.

The 2015 amendments, however, limited applicability of Section 5307 such that it does not apply to "sellers or consumers of prepaid wireless telecommunications service."  Section 5307(c) of the 911 Act, 35 Pa. C.S. § 5307(c).  The 2015 amendments also added Section 5307.1 of the 911 Act, 35 Pa. C.S. § 5307.1, relating to payment, collection, and remittance of surcharge by sellers of prepaid wireless telecommunications service.  Section 5307.1 of the 911 Act imposes a surcharge to be collected by the "seller," which Section 5302 of the 911 Act defines as:

> [a] person who sells prepaid wireless telecommunications service or a prepaid wireless device bundled with prepaid telecommunication service to another person.

The Commonwealth distributes money from the 911 Fund to the counties under a statutorily prescribed formula.  Section 5306.1(d) of the 911 Act, 53 Pa. C.S. § 5306.1(d).

collect, remit, and report certain fees under the services fee scheme of the 911 Act. (Reproduced Record (R.R.) at 47a-79a.) The County sets forth its specific legal claims in four counts. Count I of the complaint alleges that the Service Providers were fiduciaries of the County, because the Service Providers had custody and control over all information related to the 911 fees. Count I also alleges that the Service Providers breached their fiduciary obligations by failing to charge, collect, and remit 911 fees and by submitting false or inaccurate reports to the County pertaining to those fees. (R.R. at 74a.) Count II alleges that the Service Providers committed fraud by intentionally and/or knowingly failing to charge, collect, report, and remit the 911 fees as required by the 911 Act and by materially misrepresenting and/or concealing the facts surrounding the 911 fees. (R.R. at 75a-76a.) Count III alleges that the Service Providers committed negligent misrepresentation in that the Service Providers provided false representations to the County through inaccurate 911 fees and remittance forms, and the County relied on those representations to its detriment. (R.R. at 76a-78a.) Count IV alleges that the County is unable to ascertain the extent of the underpayment of 911 fees and, therefore, requests the trial court to compel an accounting. Count IV additionally asks the trial court to enjoin the Service Providers from continuing to violate the 911 Act and to award monetary damages. (R.R. at 78a-79a.)

The Service Providers filed joint preliminary objections to the County's complaint. The Service Providers first object on the ground that the 911 Act provides the Pennsylvania Emergency Management Agency (PEMA) exclusive authority to enforce the 911 Act. The Service Providers also object to Count II, which alleges fraud, on the ground that the complaint lacks particularity

4

and specificity. In their third preliminary objection, the Service Providers contend that Count I fails to state a claim for breach of fiduciary duty, because the County fails to allege facts that would establish a fiduciary relationship or confidential relationship between the County and the Service Providers. Fourth, the Service Providers object to Count III under the economic loss doctrine, because the County alleges only money damages as a result of the purported negligent misrepresentation. In their fifth preliminary objection, the Service Providers object to Count IV and contend that the County is not entitled to an accounting, because Count IV does not assert a breach of a promise or contract, which is necessary to support a request for an accounting. Finally, the Service Providers object to the complaint on the ground that it fails to develop any claim against unnamed "Subsidiaries and Related Entities" that are captioned in the complaint.[2]

On August 11, 2016, the trial court issued an opinion and order, sustaining the Service Providers' first preliminary objection. The trial court highlighted PEMA's authority under now-repealed Section 5311.13 of the 911 Act,[3] which provided:

> In addition to any powers expressly enumerated in this chapter, the agency has the power and duty to enforce and execute, by its regulations or otherwise, this chapter. The agency may institute injunction, mandamus[,] or other appropriate legal proceedings to enforce this chapter and regulations promulgated under this chapter.

---

[2] Additionally, certain Service Providers moved the trial court to transfer the case to the Public Utility Commission. (Certified Record (C.R.), Item No. 22.) The trial court determined the motion was moot in its August 11, 2016 opinion.

[3] 35 Pa. C.S. § 5311.13, *repealed by* the Act of June 29, 2015, P.L. 36.

Section 5302 of the 911 Act defines "agency" as PEMA. According to the trial court, given PEMA's authority under now-repealed Section 5311.13, the County has no authority to bring its case—either due to Section 1504 of the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa. C.S. § 1504,[4] or for lack of standing. Because the trial court sustained the Service Providers' first preliminary objection, it declined to address the remaining preliminary objections.

Following the trial court's August 11, 2016 opinion, the County filed a motion for reconsideration. The County attached to its motion an Affidavit of Robert Mateff, Deputy Director for PEMA (Mateff Affidavit). The Mateff Affidavit explained that PEMA reviewed the trial court's August 11, 2016 opinion and interpreted the 911 Act differently than the trial court. According to the Affidavit, "PEMA has always interpreted [former] Section 5307(e)(1) [of the 911 Act, 35 Pa. C.S. § 5307(e)(1)] to authorize the counties to police the telephone companies [sic] collection practices." (R.R. at 901a.) The County argued that the trial court should reconsider its decision based on the Mateff Affidavit and afford deference to PEMA's interpretation. (R.R. at 890a-97a.) On September 8, 2016, the trial court denied the County's motion for reconsideration.

---

[4] Section 1504 of the Statutory Construction Act provides:

In all cases where a remedy is provided or a duty is enjoined or anything is directed to be done by any statute, the directions of the statute shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into effect.

On appeal,[5] the County first argues that former Section 5307(e)(1) of the 911 Act authorized the County to pursue its case against the Service Providers. The County argues, in the alternative, that former Section 5307(e)(1) was at least ambiguous, and, thus, this Court should afford deference to PEMA's interpretation as set forth in the Mateff Affidavit. The County also contends that Section 1504 of the Statutory Construction Act does not preclude the County's claims, because the 911 Act does not provide an adequate statutory remedy. Finally, the County argues that it has a constitutionally-protected interest in the 911 fees and that the trial court's interpretation of the 911 Act violated the County's procedural due process rights by depriving the County of an adequate remedy.[6]

In response, the Service Providers argue that former Section 5307(e)(1) of the 911 Act does not authorize the County's suit, because that section pertains to the *collection* of 911 fees, as opposed to the allegedly noncompliant *billing* of 911 fees. The Service Providers then argue that the Mateff Affidavit should not be given deference first, because it cannot trump the plain

___

[5] This Court's review of a trial court's order sustaining preliminary objections and dismissing a complaint is limited to determining whether the trial court abused its discretion or committed an error of law. *Petty v. Hosp. Serv. Ass'n of Ne. Pa.*, 967 A.2d 439, 443 n.7 (Pa. Cmwlth. 2009), *aff'd*, 23 A.3d 1004 (Pa. 2011). When reviewing preliminary objections, the Court must regard all well pleaded relevant and material facts as true and may sustain preliminary objections only when they are free and clear from doubt. *Id.*

[6] Thirteen other counties—Beaver, Berks, Chester, Clarion, Cumberland, Dauphin, Delaware, Lebanon, Mercer, Somerset, Washington, Westmoreland, and York (Amici Counties)—filed similar complaints against various telecommunication service providers in their respective counties. The Amici Counties filed an amicus curiae brief pursuant to Pennsylvania Rule of Appellate Procedure 531, and their arguments align closely with those advanced by the County. Additionally, the Pennsylvania Chamber of Business and Industry and the Chamber of Commerce of the United States of America filed an amicus curiae brief, aligned with the Service Providers.

language of the statute, and second, because it lacks the formality of notice-and-comment or any other procedural check on the agency. The Service Providers argue that the trial court correctly determined that PEMA alone has the authority to enforce the 911 Act against service providers. The Service Providers cite to *Petty v. Hospital Service Association of Northeastern Pennsylvania*, 23 A.3d 1004 (Pa. 2011), in support of their contention that the County's option to notify PEMA of the alleged violation of the 911 Act constitutes a sufficient remedy for the County. The Service Providers further argue that because the 911 Act provides a sufficient statutory remedy, Section 1504 of the Statutory Construction Act precludes the County from pursuing common law claims. Finally, the Service Providers argue that the trial court's interpretation did not implicate due process concerns, because the County did not have a constitutionally protected property interest in the 911 fees.

In support of its purported statutory authority to bring this suit, the County points to former Section 5307(e) of the 911 Act. Prior to the 2015 amendments to the 911 Act, former Section 5307(e) provided:

> (e) Collection Enforcement.--
>
> > (1) The local exchange telephone company shall not be required to take any legal action to enforce the collection of any *charge imposed under this chapter. Action may be brought by or on behalf of the public agency imposing the charge.*
> >
> > (2) The local exchange telephone company shall annually provide, upon request of the governing body of the county, a list of the names and addresses of those service users which carry a balance that can be determined by the telephone company to be the nonpayment of any *charge imposed under this chapter.*

8

(3) The local exchange telephone company shall not be liable for uncollectible amounts.

(Emphasis added.) The County draws this Court's attention to the second sentence in former Section 5307(e)(1) of the 911 Act and argues that the various counties in the Commonwealth are the "public agenc[ies]" referred to in that sentence, and, therefore, they may bring suit as the entity imposing the charge. The Service Providers contend that the trial court was correct in its determination that former Section 5307(e)(1) merely provided the County with authority to pursue actions against *subscribers* that fail to pay the 911 fees.

We agree with the Service Providers that former Section 5307(e) of the 911 Act clearly and unambiguously does not provide the County with authority to bring this suit. Subsections (1) and (2) of former Section 5307(e) both contained the phrase "charge imposed under this chapter." Subsection (2) addressed the "charge imposed" that a subscriber fails to pay after that subscriber had received a bill. We read former Section 5307(e), therefore, as only having referred to the *collection* of the 911 fees after the service provider had billed the subscriber. Former Section 5307(e) was silent, however, as to *billing*. Stated otherwise, former Section 5307(e) did not address a situation where a telecommunication service provider failed to bill the subscriber or undercharged the subscriber. Because former Section 5307(e) pertained to the collection—as opposed to the billing—of 911 fees, we agree with the trial court that former Section 5307(e) did not provide the authority for the County to bring its claims in this case.[7]

---

[7] While we understand former Section 5307 of the 911 Act to have pertained unambiguously to the collection of 911 fees once a subscriber had been billed, we note that this Court would not grant deference to the Mateff Affidavit even if former Section 5307 were ambiguous. The County does not cite to a single case, nor is this Court aware of any, in support **(Footnote continued on next page…)**

While we agree with the Service Providers that former Section 5307(e) does not grant the County authority for its suit, we are not persuaded that PEMA's authority precludes the County from bringing its suit. In discussing PEMA's authority under the 911 Act, both the trial court and now the parties cite to the now-repealed Section 5311.13 of the 911 Act. We believe that the applicable provision, however, is from the amended 911 Act, which was in place when the County brought this action. Under the amended 911 Act, PEMA's authority is now found in Section 5303(a) of the 911 Act, 35 Pa. C.S. § 5303(a), which provides in relevant part:

> (a) Powers and duties of agency.—The agency shall have the following powers and duties:
>
> . . . .
>
> (17) To enforce this chapter through injunction, mandamus or other appropriate proceeding.
>
> (18) To take other actions necessary to implement and enforce this chapter.

PEMA's authority under the now-repealed Section 5311.13 and the current Section 5303 are nearly identical for our purposes. This Court believes, and the parties appear to agree, that PEMA has authority under the 911 Act to enforce the statutory scheme. The question in the instant appeal, therefore, is whether that authority is exclusive.

We disagree with the trial court's conclusion that PEMA's authority is exclusive. PEMA, the counties of the Commonwealth, and the various service

---

**(continued…)**

of the position that courts should grant deference to an affidavit by a single employee of an administrative agency in civil litigation, particularly, litigation in which the agency is not a part.

10

providers all have different roles and responsibilities under the Commonwealth's emergency response statutory scheme. Pertinent to this case, these parties differ in their understanding of their respective roles and responsibilities under the statutory scheme. In addition to PEMA's ability to enforce the 911 Act, the County may also seek direction from a court as to its role and that of PEMA and the Service Providers. At the very least, the County is entitled to a court ruling on its legal dispute.

Our Supreme Court's decision in *Petty* does not compel a different conclusion. In *Petty*, a construction company and its owner sued an insurance company that provided health insurance coverage for its employees. The construction company alleged that the insurance company acquired profits in excess of the "incidental profit" permitted by Section 5545 of the Pennsylvania Nonprofit Corporation Law of 1988 (Nonprofit Law), 15 Pa. C.S. § 5545.[8] The Supreme Court held that the construction company and its owner did not have standing as subscribers to challenge corporate actions of the insurance company, and it based that determination primarily on the statutory standing restrictions in

---

[8] Section 5545 of the Nonprofit Law provides:

A nonprofit corporation whose lawful activities involve among other things the charging of fees or prices for its services or products, shall have the right to receive such income and, in so doing, may make an incidental profit. All such incidental profits shall be applied to the maintenance and operation of the lawful activities of the corporation, and in no case shall be divided or distributed in any manner whatsoever among the members, directors, or officers of the corporation. As used in this section the terms fees or prices do not include rates of contribution, fees or dues levied under an insurance certificate issued by a fraternal benefit society, so long as the distribution of profits arising from said fees or prices is limited to the purposes set forth in this section and section 5551 (relating to dividends prohibited; compensation and certain payments authorized).

11

former Section 5793(a) of the Nonprofit Law.[9]   Former Section 5793 limited jurisdiction to "members[s], director[s], member[s] of an other body, officer[s] or otherwise of a nonprofit corporation," which, as the Supreme Court explained, required some degree of "authority, rights, and influence over corporate decision-making."  *Petty*, 23 A.3d at 1010.  The construction company and its owner, as mere subscribers or policyholders, did not have such a relationship with the insurance company.

The Supreme Court also rejected the construction company's common law standing argument.  In explaining that holding, the Supreme Court reasoned:

> [The construction company] do[es] not seek to prove an actual breach of the insurance contract's terms for matters such as failing to provide coverage for treatments or for poor settlement practices.  Instead they seek to attack [the insurance company]'s business-making decisions.

*Petty*, 23 A.3d at 1013.  The construction company and owner sued as general consumers rather than as specifically-harmed grievants and, therefore, did not have common law standing either.  Moreover, the Supreme Court explained, because former Section 5793(a) of the Nonprofit Law precluded statutory standing, Section 1504 of the Statutory Construction Act prohibited the construction company and its owner from "do[ing] under common law what they [were] clearly prohibited from doing under statute."  *Id.* at 1014.

---

[9] Prior to amendments that the General Assembly made to the Nonprofit Law in 2013, Section 5793(a) of the Nonprofit Law provided:

> (a) General rule.  Upon petition of any person whose status as, or whose rights or duties as, a member, director, member of an other body, officer or otherwise of a nonprofit corporation are or may be affected by any corporate action, the court may hear and determine the validity of such corporate action.

Finally, in *Petty*, the Supreme Court noted that the construction company and owner could take their complaint to the Attorney General, who did have to authority to enforce the Nonprofit Law. The Court reasoned that the construction company was not without a remedy because it could both shop for insurance elsewhere and notify the Attorney General.

According to the Service Providers, *Petty* demonstrates an instance of Pennsylvania Courts "apply[ing] [Section] 1504 [of the Statutory Construction Act] to bar common-law claims where the General Assembly vested enforcement power in an agency and denied it to the plaintiff." (Serv. Prov. Br. at 35.) The Service Providers liken the ability of the Attorney General to enforce the Nonprofit Law to PEMA's ability in the current case to enforce the 911 Act, and they argue that under *Petty*, Section 1504 bars the County's suit. We disagree.

This case is distinguishable for the exact reasons that the Supreme Court rejected standing for the construction company in *Petty*. First, there is a much more direct relationship between the alleged violations of the 911 Act by the Service Providers and the impact on the County than the relationship between the construction company and the insurance company's alleged excess profits in *Petty*. Whereas the construction company and owner in *Petty* sued as general consumers, with no cognizable harm, the County allegedly suffered a direct harm from the alleged undercharging and failure to charge by the Service Providers, purportedly resulting in the loss of millions of dollars in funding. *Petty* is also distinguishable because under former Section 5793(a) of the Nonprofit Law, the General Assembly "did not intend for general consumers to challenge corporate actions in a court of law." *Petty*, 23 A.3d at 1014. There is no analogous standing restriction under the 911 Act. *See also Liss & Marion, P.C. v. Recordex Acquisition Corp.*,

13

983 A.2d 652 (Pa. 2009) (rejecting applicability of Section 1504 of the Statutory Construction Act where statute at issue did not restrict standing or provide mechanisms for resolution and where plaintiff suffered direct harm). The County is alleging a specific harm that stems from its direct relationship with the Service Providers under the 911 Act's statutory scheme. The County has obligations under this statutory scheme and its ability to meet those obligations is dependent on the Service Providers charging consumers in compliance with the 911 Act.

We conclude, therefore, that the 911 Act does not preclude the County from bringing its dispute to a court for resolution. We reach no conclusion, however, as to the merits of the chosen causes of action or forms of relief set forth in the County's complaint.

Accordingly, we reverse the trial court's order and remand the matter to the trial court to rule on the Service Providers' remaining preliminary objections and any other actions consistent with this opinion.

P. KEVIN BROBSON, Judge

Judge Cohn Jubelirer did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Butler,                          :
                      Appellant      :
                                                :

              v.                                 :    No. 1506 C.D. 2016
                                                :

Centurylink Communications, LLC,           :
and all subsidiaries and related entities; :
The United Telephone Company of            :
Pennsylvania LLC, and all subsidiaries     :
and related entities; Consolidated         :
Communications of Pennsylvania,            :
LLC, and all subsidiaries and              :
related entities; Consolidated             :
Communications Enterprise Services,        :
Inc. and all subsidiaries and related      :
entities; Core Communications, Inc.,       :
and all subsidiaries and related           :
entities; Intermedia Communications        :
of Florida, Inc., and all subsidiaries     :
and related entities; Verizon              :
Pennsylvania, Inc., and all                :
subsidiaries and related entities;         :
Level 3 Communications, LLC, and           :
all subsidiaries and related entities;     :
Telcove of Eastern Pennsylvania,           :
and all subsidiaries and related           :
entities; AT&T Corp., and all              :
subsidiaries and related entities;         :
Teleport Communications America,           :
LLC, and all subsidiaries and related      :
entities; US LEC of Pennsylvania,          :
Inc., and all subsidiaries and related     :
entities; Bandwidth.com CLEC, LLC,         :
and all subsidiaries and related           :
entities; Comcast Phone of                 :
Pennsylvania, LLC, and all                 :
subsidiaries and related entities;         :
Peerless Network of Pennsylvania,          :
LLC, and all subsidiaries and related      :
entities; and ABC Companies                :
1 Through 20                               :

# **O R D E R**

AND NOW, this 8th day of June, 2017, the order of the Court of Common Pleas of Butler County (trial court) is hereby REVERSED, and the matter is REMANDED to the trial court for further proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
P. KEVIN BROBSON, Judge