# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jonathan Barris, : 
              Appellant : 
               : 
        v. :   No. 218 C.D. 2016
               :   Argued: September 13, 2017
Stroud Township : 

**BEFORE:**   **HONORABLE MARY HANNAH LEAVITT, President Judge**
                **HONORABLE RENÉE COHN JUBELIRER, Judge**
                **HONORABLE ROBERT SIMPSON, Judge**
                **HONORABLE P. KEVIN BROBSON, Judge**
                **HONORABLE PATRICIA A. McCULLOUGH, Judge**
                **HONORABLE MICHAEL H. WOJCIK, Judge**
                **HONORABLE JOSEPH M. COSGROVE, Judge**

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**              **FILED: November 17, 2017**

Jonathan Barris (Barris) appeals from an order of the Court of Common Pleas of Monroe County (trial court), dated January 8, 2016, which sustained the preliminary objections of Stroud Township (Township) and dismissed his six-count complaint, challenging the legality of Stroud Township Ordinance No. 9-2011 (Ordinance). The Ordinance regulates the discharge of firearms within the Township and prescribes penalties for violations. The Ordinance provides, in pertinent part:

> Section 1: Intent and Purpose.
>
>     Due to the density of the population of the Township of Stroud, it is necessary that the discharging of firearms be regulated for the protection of the public health and safety and general welfare of the residents, property owners, visitors and others within Stroud Township, and

that the unauthorized discharge of firearms be prohibited.[1]

. . . .

Section 3: Firing or discharge restricted.

It shall be unlawful to fire or discharge any firearm within the Township . . . except as provided in Section 4 Exceptions below.

Section 4: Exceptions.

Exceptions to this Ordinance are as follows, however in no case shall a firearm be discharged before dawn or after dusk and/or within 150 yards of an adjacent occupied structure, camp or farm, except as provided under paragraphs A., B., indoor facilities under D., and E. below:

A. The use of firearms is permitted when employed by any duly appointed law enforcement officer in the course of his or her official duty.

B. The use of firearms is permitted when necessary as authorized under state and/or federal laws.

C. The use of firearms is permitted when hunting . . . .

D. *The discharging of firearms shall be allowed on indoor or outdoor shooting ranges pursuant to applicable provisions of the Stroud Township Zoning Ordinance, as may be amended, under the supervision of the owner or occupant of that property or his or her duly appointed representative, provided that:*

*1. All shooting ranges shall be constructed and operated in a safe and prudent manner. If standards, regulations and/or recommended procedures for operation are established or promulgated by any recognized body, such as the National Rifle Association or the American Trap Shooting Association, then such*

---

[1] Pursuant to Section 1506 of the Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. § 66506, the Board of Supervisors is authorized to make and adopt ordinances necessary for the proper management, care, and control of the township and the maintenance of the health and welfare of the township and its citizens.

*standards, regulations and/or procedures shall be adhered to.*

> *2. Such range is issued zoning and occupancy permits by the township zoning officer, which permits shall specify the area or areas designated for shooting range purposes.*

E. Farmers engaged in "normal agricultural operation" protecting their "agricultural commodity" from animal predators . . . .

F. Members of any organization incorporated under laws of this Commonwealth engaged in target shooting upon the grounds or property belonging to or under the control of such organization or affiliated club, such as the Pennsylvania Federation of Sportsmen's Clubs, Inc.

. . . .

Section 7:  Violations and penalties.

Any person or persons discharging a firearm in violation of any of the provisions of this Ordinance shall be subject to a fine of not more than six hundred dollars ($600.00) plus court costs, including reasonable attorney fees.  If the defendant neither pays nor timely appeals the judgment, the township may enforce the judgment pursuant to the applicable rules of civil procedure.  Each day's continued violation shall constitute a separate offense.  In default in the payment of any fine imposed hereunder, the defendant shall be sentenced to undergo imprisonment for a period not exceeding thirty (30) days.

(Ordinance at 1-3; Reproduced Record (R.R.), Attachment B at 1-3 (footnote added) (emphasis added)).  Specifically, in his September 2015 complaint, Barris sought declaratory and injunctive relief against the Township claiming that the Ordinance, which effectively prohibits him from using a portion of his property within the Township as a private shooting range, violates his rights under the Second

3

Amendment to the United States Constitution[2] and Article I, Section 21 of the Constitution of Pennsylvania[3] and is preempted by Section 6120 of the Pennsylvania Uniform Firearms Act of 1995 (Firearms Act), *as amended*, 18 Pa. C.S. § 6120,[4] and Sections 1 and 2 of what is commonly referred to as the range protection statutes, Act of June 2, 1988, P.L. 452, *as amended*, 35 P.S. §§ 4501-4502.[5]

---

[2] The Second Amendment provides: "A well regulated Militia, being necessary for the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.

[3] Article I, Section 21 of the Constitution of Pennsylvania provides that the "right of the citizens to bear arms in defense of themselves and the State shall not be questioned." Pa. CONST. art. I, § 21.

[4] Section 6120(a) of the Firearms Act provides:

> (a) General Rule.—No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth.

[5] Located in Chapter 23A of Title 35, Health and Safety, the range protection statutes pertain to a noise pollution exemption for shooting ranges and provide:

> § 1. General immunity for noise
>
> All owners of rifle, pistol, silhouette, skeet, trap, black powder or other ranges in this Commonwealth shall be exempt and immune from any civil action or criminal prosecution in any matter relating to noise or noise pollution resulting from the normal and accepted shooting activity on ranges, provided that the owners of the ranges are in compliance with any applicable noise control laws or ordinances extant at the time construction of the range was initiated. If there were no noise control laws or ordinances extant at the time construction of the range was initiated, then the immunity granted by this act shall apply to said ranges.
>
> . . . .

35 P.S. § 4501.

> § 2. Nuisances and injunction
>
> The owners of the ranges shall not be subject to any action for nuisance, and no court in this Commonwealth shall enjoin the use or operation of the ranges on

In response, the Township filed its preliminary objections in the nature of a demurrer—*i.e.*, challenging the legal sufficiency of Barris's pleading. The trial court sustained the Township's preliminary objections and dismissed Barris's complaint in its entirety. The trial court concluded that the Ordinance was not preempted under the Firearms Act because the Ordinance regulates only the "discharge" of firearms within the Township, which the trial court concluded was a subject omitted from the scope of the Firearms Act. Accordingly, the trial court dismissed Counts I and II of the complaint. The trial court also concluded that the Ordinance was not preempted under Pennsylvania's range protection statutes because those statutes only protect owners of ranges from civil actions or criminal prosecutions relating to noise, noise pollution, and nuisance. Because the Ordinance does not purport to regulate noise, noise pollution, or nuisance, the trial court concluded that it was not in conflict with the range protection statutes and dismissed Counts III and IV of the complaint.

In dismissing Barris's state and federal constitutional claims, the trial court opined that neither the Second Amendment nor the Pennsylvania Constitution have been construed "to grant an individual the right to discharge a firearm whenever he or she pleases." (Trial Ct. Op. at 20; R.R. 156.) Similarly, the trial court opined that because the Ordinance regulates the discharge of firearms for the safety of the Township's citizens and Barris's "firearms are not being taken away from him," the Ordinance passes muster under *District of Columbia v. Heller*, 554 U.S. 570 (2008)

---

the basis of noise or noise pollution, provided that the owners of the ranges are in compliance with any applicable noise control laws or ordinances extant at the time construction of the range was initiated. If there were no noise control laws or ordinances extant at the time construction of the range was initiated, then the immunity granted by this act shall apply to said ranges.

35 P.S. § 4502.

5

(*Heller*), wherein the United States Supreme Court held that a handgun ban violated the rights conferred by the Second Amendment. (Trial Ct. Op. at 21; R.R. 157.) To the extent Barris claims that the Ordinance restricts his ability to defend himself in his home, the trial court noted that the Ordinance expressly allows discharge of firearms for self-defense, as authorized under Pennsylvania law. (Trial Ct. Op. at 22; R.R. 158.) Accordingly, the trial court dismissed Counts V and VI of the complaint.

On appeal,[6] Barris does not challenge the portions of the trial court order that dismissed Counts I through IV of the complaint. Rather, Barris argues that the trial court should have afforded him the opportunity to amend his complaint, rather than dismiss it with prejudice, or that this Court should allow amendment "to better aver facts contesting whether [the Ordinance], standing alone, passes Constitutional muster."[7] (Barris Br. at 4). Barris also challenges the trial court's analysis of his constitutional challenge to the Ordinance (Counts V and VI). We will first address Barris's challenge to the dismissal of Counts V and VI.

Though difficult to glean from Barris's brief on appeal, we discern two components to his allegations of error with respect to the dismissal of Counts V and

---

[6] This Court's review of a court's order sustaining preliminary objections and dismissing a complaint is limited to determining whether the trial court abused its discretion or committed an error of law. *Petty v. Hosp. Serv. Ass'n of Ne. Pa.*, 967 A.2d 439, 443 n.7 (Pa. Cmwlth. 2009), *aff'd*, 23 A.3d 1004 (Pa. 2011). When reviewing preliminary objections, the Court must regard all well pleaded relevant and material facts as true, and may sustain preliminary objections only when they are free and clear from doubt. *Id.*

[7] Barris did not specifically ask the trial court for leave to amend his complaint. In his brief to our Court, counsel for Barris states that he argued in his brief in response to the Township's preliminary objections that, if they were sustained, the remedy is not dismissal with prejudice but with leave to file amended pleadings. He did not actually make such an argument in that brief, but rather included similar language as part of his recitation of the general law concerning preliminary objections. As the trial court indicated in its subsequent opinion filed pursuant to Pa. R.A.P. 1925, Barris did not seek reconsideration of the dismissal of his action and first raised the amendment issue in his concise statement of errors complained of on appeal.

VI of the complaint. The first is Barris's contention that the trial court looked only at the facial aspect of his constitutional challenge, ignoring his "as applied" challenge. (Barris Br. at 8-9.) The second is Barris's contention that he only seeks to do what he lawfully and safely did *before* the passage of the Ordinance—discharge his firearms on his property. (Barris Br. at 10, 18.) In response, the Township defers to the trial court's analysis of Barris's constitutional challenge. (Township Br. at 6 ("To the extent the court wishes to consider the underlying firearms issues, the Township adopts the brief filed by the lower court by reference.").

There is a strong presumption in the law that all legislative enactments are constitutional. *Caba v. Weaknecht*, 64 A.3d 39, 49 (Pa. Cmwlth.), *appeal denied*, 77 A.3d 1261 (Pa. 2013). To overcome that burden, a challenger must show that the legislative enactment "clearly, palpably, and plainly" violates either the United States or Pennsylvania Constitutions. *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Cmwlth.*, 877 A.2d 383, 393 (Pa. 2005) (emphasis omitted). There are two ways to challenge the constitutionality of a legislative enactment: either the enactment is unconstitutional on its face or as applied in a particular circumstance. *Johnson v. Allegheny Intermediate Unit*, 59 A.3d 10, 16 (Pa. Cmwlth. 2012) (en banc). The facial challenge is the more difficult. To prevail, the challenger must show that "no set of circumstances exist under which the [enactment] would be valid." *Clifton v. Allegheny Cnty.*, 969 A.2d 1197, 1222 (Pa. 2009); *see also Peake v. Cmwlth.*, 132 A.3d 506, 517 (Pa. Cmwlth. 2015) (en banc) (adopting "plainly legitimate sweep" standard for evaluating facial constitutional challenges). An as-applied attack, by contrast, does not challenge the enactment as written, but only as applied to a particular person under a particular set of circumstances. *Caba*,

7

64 A.3d at 50; *see also Zedonis v. Lynch*, 233 F. Supp. 3d 417 (M.D. Pa. 2017) (setting forth framework for evaluating as-applied Second Amendment challenges). In either type of challenge, courts must evaluate the enactment's constitutionality by applying the appropriate level of scrutiny—strict, intermediate (or heightened), or rational basis.

Read in the light most favorable to Barris, Counts V and VI of the complaint can fairly be read as setting forth both facial and as-applied constitutional challenges to the Ordinance under both the Second Amendment and Article I, Section 21 of the Constitution of Pennsylvania. As noted above, in its opinion the trial court cited judicial opinions for the general proposition that the right to bear arms under the United States and Pennsylvania Constitutions is not unlimited. *See, e.g.*, *Heller*; *Perry v. State Civil Serv. Comm'n (Dep't of Labor and Indus.)*, 38 A.3d 942, 955 (Pa. Cmwlth. 2011). The trial court then rejected Barris's constitutional challenge for two reasons: (1) the Ordinance does not take Barris's firearms away; and (2) the Ordinance expressly authorizes Barris to use his firearms for self-defense. The trial court, however, failed to conduct any constitutional analysis of the gist of Barris's claim—*i.e.*, that the Ordinance, which restricts his ability to practice firing his firearms on his property (an activity that he lawfully engaged in prior to the passage of the ordinance at issue), unconstitutionally infringes on his rights under both the Second Amendment and Article I, Section 21 of the Constitution of Pennsylvania either facially or as applied.

Because the trial court's opinion in support of its dismissal of Counts V and VI of the complaint lacked the necessary constitutional analysis, we must vacate the portion of the trial court's order striking Counts V and VI of the complaint and remand to the trial court to further consider Barris's constitutional challenges. As we

are remanding the matter, we also direct the trial court on remand to afford Barris a reasonable period within which to file an amended complaint with respect to Counts V and VI of his complaint only.[8]

_____
P. KEVIN BROBSON, Judge

---

[8] Should Barris file an amended complaint, the pending preliminary objections would become moot, although we would anticipate that the Township would renew its demurrer by way of preliminary objections to the amended complaint.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jonathan Barris,                :
          Appellant      :
                       :
          v.           :   No. 218 C.D. 2016
                       :
Stroud Township        :

## O R D E R

AND NOW, this 17th day of November, 2017, the order of the Court of Common Pleas of Monroe County (trial court), dated January 8, 2016, is hereby VACATED, in part. Paragraph 5 of the order, sustaining Stroud Township's demurrer to Counts V and VI of the complaint is VACATED, and the matter is REMANDED to the trial court for further proceedings consistent with the accompanying opinion.

Jurisdiction relinquished.

_____
P. KEVIN BROBSON, Judge